[Civ. No. 5575. First Appellate District, Division Two.—February 26, 1927.]

B. L. STITZINGER, Respondent, v. CLAYTON G. TRUITT et al., Defendants; HARRY MILLER et al., Appellants.

[1] CONTRACTS—CONSTRUCTION OF DERRICK — AUTHORITY OF MANAGER OF SYNDICATE—ACCEPTANCE OF BENEFITS—ESTOPPEL.—In an action to recover a sum of money for an oil well derrick constructed by plaintiff under a contract entered into between plaintiff and the manager of a syndicate, for and on behalf of the syndicate (which the trial court found to be a copartnership), the appellants, who were also members of such syndicate, are estopped to set up the defense that in making the contract said manager exceeded the authority given him by the articles of the syndicate, where such appellants allowed the derrick to be constructed and accepted the benefits of the contract.

[2] ID. — JOINT STOCK COMPANIES — RIGHTS AND LIABILITIES OF MEMBERS—COMMON LAW—PARTNERSHIP.—At common law joint stock companies were regarded as commercial partnerships and in the absence of express provisions, statutory or otherwise, the rights and liabilities of their members are to be determined by substantially the same rules; and except in so far as such liability may be limited by statute or by special agreement with those dealing with the association, the stockholders of a joint stock company are personally liable for the debts and obligations of the company precisely as general partners are liable for the debts of the firm

---

1. See 21 R. C. L., Principal and Agent, sec. 111; 1 Cal. Jur., Agency, sec. 66.

2. See 20 R. C. L., Partnership, sec. 323; 14 Cal. Jur., Joint Stock Companies, sec. 5.

and liability to creditors is not changed by the fact that the form of the association was intended to give the association the attributes of a corporation.

[3] ID. — LIABILITY OF MEMBER OF SYNDICATE — PARTNERSHIP—ASSOCIATIONS.—In such action, there being no claim or pretense that the syndicate in question complied with any statute providing for a joint stock company or for any kind of a special partnership, the appellants would be liable as general partners; and their liability in such case is of the same nature whether they be regarded as general copartners or merely as members of an association doing business under an associate name.

[4] ID. — LIMITATION OF MANAGER'S AUTHORITY — EFFECT ON THIRD PARTIES AND CREDITORS—NOTICE.—In such action, whatever force the provision in the articles of the syndicate limiting the manager's authority might have amongst the members as between themselves in the syndicate—whether it be considered a partnership, an association, or a joint stock company—it would not be binding on third parties or creditors having no notice.

---

(1) 2 C. J., p. 497, n. 80.    (2) 33 C. J., p. 880, n. 39, p. 889, n. 58, 59.    (3) 33 C. J., p. 889, n. 58.    (4) 33 C. J., p. 889, n. 61.

APPEAL from a judgment of the Superior Court of Los Angeles County. Ira F. Thompson, Judge. Affirmed.

The facts are stated in the opinion of the court.

Anderson & Anderson and Victor T. Watkins for Appellants.

McWhinney & Clock for Respondent.

KOFORD, P. J.—Plaintiff recovered judgment for $5,750 for the construction of an oil well derrick. Two only of the defendants appeal—Miller and Ragos. They were personally served with summons. The points raised by these appellants are in general that the facts surrounding the making of the contract for the erection of the derrick were such and the nature of the written articles forming the syndicate was such that no personal judgment should have been given against them.

The amended complaint alleges that the syndicate is a business trust. The joint answer of these appellants and the syndicate is equivocal, denying that the syndicate is other than the articles constitute it. The court finds that defend-

ants Truitt, Miller, and Ragos organized the syndicate "which was purported to be a trust but which was in truth and in fact a copartnership of which the said three named defendants were the copartners."

Other findings of the court follow: That the articles provided that the business and property of the syndicate should be managed by a board of three trustees. That Miller, Ragos, and Truitt, each owner and holder of two units or shares in the syndicate, were elected trustees and they were respectively chairman, secretary-treasurer, and manager. That the articles provided that no expenditure over $500 should be allowed or approved without the previous consent of the trustees. (Art. 12th and 17th.) "That contrary to said provision but for and on behalf of said copartnership, and within the scope of his authority as the manager and a copartner, defendant Truitt made . . . the contract with plaintiff, which contract was necessary for the copartnership to carry out the terms of the oil and gas lease taken by the copartnership . . . (the syndicate)." That said contract was made by Truitt as member and manager of said copartnership, for its best interests, in its name and on its behalf, but without the knowledge or consent of Miller or Ragos. That plaintiff had no knowledge of this provision of the articles nor of any agreement or understanding whereby the authority of Truitt was limited, but that plaintiff was informed by Truitt that Miller and Ragos had authorized him to contract for and to go ahead with the construction of the derrick; that plaintiff relied on these statements, made the contract, and constructed and completed the derrick in good faith and without knowledge that such was without the knowledge or consent of appellants. That appellants, after knowing of the beginning of the erection of the derrick, advertised publicly for the sale of units and in doing so put forward the statement that the lumber was on the ground and that a derrick was going up. That in an application to the corporation commissioner and to various prospective purchasers of units at the leased premises at different times between February 18th and April 1st, appellants represented that the derrick had been paid for and was the property of the syndicate.

[1] The appellants claim they are not liable because the manager exceeded his power as defined in the articles respecting expenditures in excess of $500. Whatever protec-

tion against debts there may or may not have been to the unit owners in general by virtue of this provision, we think that as far as these two appellants are concerned, they are estopped from setting up this defense to the plaintiff's claim by their conduct in accepting the benefits of the contract and allowing the derrick to go up on the leased land.   Erecting the derrick was the only possible thing for the syndicate to do if it was to accomplish anything at all.   The conduct of these appellants in standing on the leased premises in sight of the derrick and using the fact of its progressing construction as a selling point would be sufficient to lead plaintiff to believe the contract was fully authorized by them.

Respondent cites numerous authorities to the effect that the articles in question created a partnership and not a trust. It is pointed out that when the members of a so-called business trust reserve to themselves such a large measure of power and control over the trustees as is done in this case, then the trustees are merely agents of the members and the members are personally liable for debts as general partners. Appellants have not replied to these authorities, having filed no closing brief, but in their opening brief appellants claim the articles constitute a joint stock company.   **[2]**   ''At common law joint stock companies were regarded as commercial partnerships and in the absence of express provisions statutory or otherwise the rights and liabilities of their members are to be determined by substantially the same rules.''   (33 C. J. 880; citing *Bullard* v. *Kinney*, 10 Cal. 60; *Flint* v. *Cadman*, 247 Mass. 463 [142 N. E. 256].)   ''Except in so far as such liability may be limited by statute or by special agreement with those dealing with the association, the stockholders of a joint stock company are personally liable for the debts and obligations of the company precisely as general partners are liable for the debts of the firm and liability to creditors is not changed by the fact that the form of the association was intended to give the association the attributes of a corporation.''   (33 C. J. 889.)

**[3]**   There is no claim or pretense here that the syndicate complied with any statute providing for a joint stock company or for any kind of a special partnership.   For this reason, then, the appellants would be liable as general copartners under the general rule.   Also their liability in such case is of the same nature whether they be regarded as general copartners or merely as members of an association

doing business under an associate name (*Leake* v. *City of Venice*, 50 Cal. App. 462, 465 [195 Pac. 440]; Code Civ. Proc., sec. 388).

[4] The question here is not so much what the association is as whether the appellants are liable on any of the several theories of the court's findings. There is also the court's finding which is supported by the evidence that the plaintiff had no notice of the asserted limitation on the manager's power. Whatever force the provision might have amongst the members as between themselves in any of the considered organizations, it would not be binding on third parties or creditors having no notice. (33 C. J. 889; *Neville* v. *Gifford*, 242 Mass. 124 [136 N. E. 160]; *Webster* v. *Utopia Confectionery* (Tex. Civ. App.), 254 S. W. 123; *Graham Hotel Corp.* v. *Lerder* (Tex. Civ. App.), 241 S. W. 700.)

For the foregoing reasons the judgment is affirmed.

Sturtevant, J., and Nourse, J., concurred.

A petition by appellants to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on April 25, 1927.