[L. A. No. 10557. In Bank.—March 30, 1931.]

DUFF S. HANSEN et al., Respondents, v. C. O. BURFORD et al., Defendants; LEONARD COLE et al., Appellants.

John T. Houser for Appellants.

O'Conner & Findlay and R. Bruce Findlay for Respondents.

SEAWELL, J.—This cause is before us upon an order of transfer after decision by the District Court of Appeal, Fourth Appellate District, reversing the judgment.

In addition to our independent consideration, we have adopted a portion of the opinion of said District Court of Appeal, by Haines, J., *pro tem.*, as expressing our view on the subject as to the sufficiency of the amended complaint, as well as for the argument and citation of authorities which it contains.

Plaintiffs Duff S. Hansen and Hans Hansen, copartners, doing business under the firm name of Hansen Lumber Company, sued in *assumpsit* to recover the price of lumber alleged to have been sold by them to defendants. Defendants V. B. Nowling, C. O. Burford and Edith Burford, his wife, defaulted, but the action went to trial against defendants Leonard Cole and J. S. Owen.

The court gave judgment against all defendants for the sum of $3,116.09, based upon a finding that said defendants were engaged in a joint adventure and the lumber was sold and delivered to them as such joint adventurers. Defendants Cole and Owen appeal from the judgment on the ground that the evidence will not sustain a finding of liability against them on the theory of joint adventure or on any other theory. We are of the view that their contention must be upheld and the judgment reversed.

The evidence shows that Cole and Owen were real estate dealers and the owners of a ten-acre tract in Fontana, San Bernardino County. They approached defendant Nowling with the object of interesting him in the purchase of said tract. As a result of their negotiations certain written agreements were entered into between Cole and Owen, on the one side, and C. O. Burford and Edith Burford, son-in-law and daughter, respectively, of Nowling, on the other side. Under said agreements two lots in said tract, each approximately 124 by 662 feet, were transferred to the Burfords. Nowling was not named as a grantee in the deeds or a party to the agreements, because he was involved by litiga-

tion and, for that reason, might experience difficulty in obtaining loans, but it appears without conflict that he was interested with the Burfords. It was Nowling who negotiated for the purchase of the lumber for which plaintiffs herein seek to recover.

One lot was transferred to the Burfords in September, 1926, and the other in December, 1926. In each case agreements similar in form were executed at about the same time as the deeds. Each agreement recited the sale and transfer of a lot to the Burfords and the execution by them of a deed of trust upon the property to secure the payment of a note for $1300 given for the purchase price. It was provided therein that the Burfords should, as quickly as could be done, procure a loan for the erection of "a five-room frame house, porch in front and rear, shingle roof, and garage 12' x 20', and a chicken unit for 1000 chickens, 100' x 20' in size, paper roof, and all according to the plans and specifications of the Riverside Building and Loan Company", and that they should proceed diligently to construct said buildings. The deed of trust executed by the Burfords to Cole and Owen to secure the payment of $1300 in each case was not to be placed of record until after the mortgage given to secure the building loan. No cash payment was made upon either of said lots.

The agreements further provided that when the buildings were completed the property should be sold to the best advantage, subject to the mortgage executed to a building and loan company as a first lien, and said trust deed as a second lien, and the profits from such resale should be equally divided between the first parties (Cole and Owen) and the second parties (the Burfords). Although the agreement did not so provide, it was understood that Nowling should share equally with the Burfords in the half of the profits to which they should be entitled. By a later provision the parties agreed to use their best efforts to sell the property, but the agreements contained no provision which made the right of Cole and Owen to participate in the profits conditional upon the sale being made to a purchaser procured by them.

Each agreement contained among its concluding provisions the following: "This contract shall not be deemed, held or construed anywhere as creating a copartnership be-

tween any of the parties to it, and shall be held to be merely the convenient means for recompensing each party for his share or interest in the property, there being no other practicable mode of division known to them at this time."

The construction of the buildings provided for was superintended by Nowling. He purchased the lumber for which plaintiffs here seek to recover the purchase price, and said lumber was charged to his name upon the books of the lumber company. It would appear that all parties believed that loans could be obtained upon each parcel sufficient to cover entirely the costs of construction, and the agreements were drawn with such a situation in contemplation. Smaller loans were obtainable than had been anticipated, and plaintiffs' lumber bill for more than $3,000 remained unpaid, except for certain trifling sums. Upon the refusal of their demands for payment, plaintiffs brought this action.

During the course of construction $500 was obtained from Cole upon the representation, according to the testimony of Cole and Owen, that such a sum would complete payment of construction bills. The Burfords gave Cole their note for said sum. The second house was completed in April, 1927. According to Owen, Nowling refused to permit him and Cole to sell the houses, but gave a listing to another agent. Cole testified that the houses were later sold under the deeds of trust and purchased by plaintiffs.

Nowling testified that he informed the lumber company that bills would be paid from the proceeds of loans upon the property and also that his son-in-law, Burford, and Cole and Owen were interested with him. Plaintiff Duff Hansen testified that Nowling had stated that the price of the lumber would be paid from loans and that others were interested with him, but he recalled only Nowling's son-in-law as having been mentioned as a party interested. Upon one occasion Cole and Owen drove Nowling to plaintiffs' lumberyard, but they did not participate in the discussion. By the terms of said agreements it was made the obligation of the Burfords to obtain loans and proceed with the erection of the buildings on lots to which they held title, and in which the only interest of Cole and Owen was as beneficiaries under deeds of trust given to secure the price paid for the lots.

It follows from a consideration of the agreements as a whole, as well as from the specific provision that they should

not be interpreted as creating a partnership, that the construction of said buildings was a matter under the control and management of the Burfords and Nowling as independent contractors. The fact that Cole and Owen made visits to the property during the course of construction does not alter the relationship between the parties. They would naturally be interested in the project.

We are further of the view that it is clearly to be implied from said clause negativing the existence of a partnership, and from the agreements considered apart from said clause, that it was the intention of the parties thereto that Cole and Owen should not be liable for any bills incurred for labor or materials in the construction of the buildings. A right to participate in profits does not, in the circumstances of this case, imply a liability for losses and expenses. Not only did Cole and Owen fail to assume liability for construction costs, but it is fairly inferable from the agreements that it was the obligation of the Burfords and Nowling to keep the construction costs within the amount to be realized from buildings loans upon each lot. There is no evidence that the agreements were subsequently modified. Nor is there evidence that Cole and Owen had any knowledge that a situation was arising in which practically the entire lumber bill for more than $3,000, representing one of the larger items in the construction costs, would be unpaid.

The right of Cole and Owen to participate in the profits upon a resale cannot be viewed as a right to a real estate agent's commission, for the reason that payment to them is not made dependent upon their procuring the purchaser. Rather, we are of the opinion that the right given Cole and Owen to share in the profits of a resale was a portion of the price charged by them to the Burfords for the two lots. They received no cash payments for said lots, and stipulated for the right to participate in the profits of a sale, in addition to receiving the notes for $1300. To adopt any other construction would be to make for the parties a contract contrary to their intention as revealed in the instruments.

The cases of *Leake* v. *City of Venice,* 50 Cal. App. 462 [195 Pac. 440], *Burks* v. *Weast,* 67 Cal. App. 745 [195 Pac. 440], and *Locke* v. *Duchesnay,* 84 Cal. App. 448 [258 Pac. 418], strongly relied upon by respondents, differ too widely

from the facts of the instant case to be authority for their contention.

We find no circumstances in the purchase of the lumber by Nowling which would preclude us from giving effect to the actual agreement between the parties and require us to hold that Cole and Owen are liable on the theory that they permitted themselves to be held out to the plaintiffs as partners or jointly liable with Nowling and the Burfords, and plaintiffs sold the lumber in reliance upon said liability. Although Nowling testified that he told plaintiffs Cole and Owen were interested with him, plaintiff Duff Hansen, who handled the transaction, said that Nowling's son-in-law was the only person he could recall as having been mentioned as a party interested. Upon the books of plaintiffs the lumber was charged to Nowling alone. The evidence falls far short of establishing a basis for liability on such theory.

The District Court of Appeal, in its opinion as to the sufficiency of the pleadings and as to substantive matters, said:

"The court also found, *inter alia:* 'That at said time [i. e., when the lumber was delivered] defendants, as shown by plaintiffs' exhibit No. 2, and defendants' exhibit No. "A" herein [these being the two contracts], were engaged upon a joint adventure and that the title to said premises was delivered and transferred to defendants C. O. Burford and Edith Burford in compliance with said contract of joint adventure and that said goods, wares and merchandise were delivered to defendants as such joint adventurers'.

"It is claimed on behalf of the appellants that what is alleged is a book account, but that the evidence shows none except as against Nowling; that, inasmuch as the complaint does not set up any partnership or joint adventure between the defendants, evidence of such a relation was inadmissible, and that the finding that such a relation existed is outside the issues and cannot, therefore, be relied on to support the judgment; that the evidence is wholly insufficient to justify the finding that the appellants were engaged with the other defendants in a joint adventure, or that the appellants in anywise authorized the purchase of the lumber on their account, or agreed to pay for it; that the trial court should have granted them a nonsuit at the conclusion of the plaintiffs' evidence and that, as against them, the judgment cannot be supported.

■ "(1) Appellants, as we say, assert that, according to the pleadings, the account sued on is a book account to which they are strangers, since the proofs show that the only person charged on the plaintiffs' books was Nowling. The distinction, as a matter of pleading, between a book account and an ordinary contract debt not founded on a writing is only important when, as in *Wright* v. *Loaiza*, 177 Cal. 605 [171 Pac. 311], the statute of limitations is involved and where the question arises whether suit may be commenced within four years, or must be begun within two years after the cause of action has accrued. In the present case, all the transactions were had within two years before the complaint was filed. In these circumstances the distinction between pleading a book account and pleading an indebtedness, generally, seems to us inconsequential.

"(2) Appellants, quoting from 20 California Jurisprudence, 757, urge that: 'There is a material variance between a complaint against an individual for what is pleaded as an individual debt, and proof that the debt is that of a partnership of which he is a member'. (Citing *Miner* v. *Rickey*, 5 Cal. App. 451 [90 Pac. 718].)

"While, therefore, as they say, they 'do not question the propriety of the common counts in the ordinary action against a debtor or joint debtors', they 'do deny their sufficiency to hold the appellants as joint adventurers'.

"The situation in *Miner* v. *Rickey* was that an action was brought by the plaintiff Miner against Rickey alone, as the court said (p. 453): 'upon the theory that plaintiff was employed by and rendered services for the defendant [Rickey] individually.' The defendant relied simply upon the denials in his answer of the material allegations of the complaint . . . Defendant's evidence . . . tended to prove that whatever liability existed in favor of plaintiff was against a partnership of which the defendant' and another 'were the members'. The court went on to say that: 'In this state it has been held that when "several persons contract together with the same party for one and the same act, they shall be regarded as jointly and not individually or separately liable in the absence of any words to show that a distinct as well as entire liability was intended to fasten upon the promisors. Especially is this the rule as to the

legal liability of partners upon their partnership obligations''.'

''The language quoted by the court is taken in substance from *Harrison* v. *McCormick*, 69 Cal. 616, 620 [11 Pac. 456, 458], where the Supreme Court, after making use of it, and citing sections 1430 and 1431 of the Civil Code, as well as section 2442 of that code and certain cases, goes on to say (pp. 620, 621):

'' 'It is also · well settled that parties to a joint contract must all be made defendants. ''Of the parties to the action'' the code says, ''Those who are united in interest must be joined as plaintiffs or defendants''. (Code Civ. Proc., sec. 382.) The plaintiff had the right to bring his action on the joint obligation of the parties to the contract against all the parties, or against the firm name by which they collectively contracted with him.'

█ ''It is manifest that these cases lend no support to appellants' thesis. The liability asserted in the amended complaint is set up as the obligation, not of one person, as in *Miner* v. *Rickey*, but according to the pleading of several persons—that is, all the defendants—and, therefore, presumptively joint. (Civ. Code, sec. 1431.) The pleading is, accordingly, sufficient to charge that the liability is joint and, as to that matter, no more would be effected had it been charged in terms that the defendants were joint adventurers. In *Pike* v. *Zadig*, 171 Cal. 273, 277 [152 Pac. 923, 925], following 15 Ency. Pl. & Pr. 920 and cases there cited, it was held that:

'' 'In an action against partners upon a partnership obligation, it is not necessary to allege a partnership between the defendants, but they may be declared against as any joint debtors.'

''The court added:

'' 'Indeed a denial of the partnership where it is alleged does not raise a material issue.' (Citing *Hunter* v. *Martin*, 57 Cal. 365, where it is said: 'If they enter into that agreement their liability did not depend upon their being partners.')

''*Pike* v. *Zadig* was followed by *Shannon* v. *Calmus*, 70 Cal. App. 652, 655 [234 Pac. 107], to the same effect.

''A joint adventure has been defined as:

" 'A special combination of two or more persons where in some specific adventure a profit is jointly sought, without any actual partnership or corporate designation.' (33 C. J. 841.)

"If, then, in suing partners on an obligation contracted by them as such, it is not necessary to allege the existence of the partnership, it would seem that the rule must apply *a fortiori* when the action is against joint adventurers, since a joint adventure is the looser form of association. We are, therefore, of the opinion that it was unnecessary for the plaintiffs, even though they claimed that the obligation of the defendants was that of joint adventurers, to allege the fact of the joint adventure. Proof of it, or that the obligation was incurred in the course of it, was not objectionable as a variance from the allegations of the complaint, and evidence of that relationship, in so far as it was a logical step in the plaintiffs' effort to prove, as against the defendants, what they had alleged as a joint obligation, was within the issues and properly admitted. Neither is the finding on the subject outside the issues, but it amounts really to the finding of a probative, rather than an ultimate, fact within the issues, and is, strictly speaking, unnecessary, the ultimate fact alleged and covered by another finding being the participation of all of the defendants jointly, in the purchase of the lumber and their joint agreement, whether express or implied, to pay for it.

"(3) Whether the findings of the trial court are supported by the evidence, however, is another question. Appellants stipulated in their written contracts with the Burfords that they should have half the net profits of the enterprise and we think the meaning of that stipulation was that they were to have them *as profits* and not as resale commissions. By the provisions in the contract as to what should be done and how the project should be financed, and by their stipulation that the arrangement should not be construed as a partnership, they undertook to provide that the enterprise should be conducted in a certain way, that expenditures should be made in so doing, and, in effect, that while they should receive half the profits, they should incur no liabilities. Whatever verbal directions they may, in conversations with Burford and with Nowling, have given the latter about going ahead with the work or ordering

lumber or other materials for it, were, as we think the evidence shows, without conflict, understood by all of the defendants to be subordinate to this general scheme. There is no evidence that can be taken to mean that the appellants ever intended or were understood by Nowling or Burford to intend that any lumber should be bought except such as should be paid for from loans made in advance as provided for in the written contract. The mere arrangement for participation in the profits is by no means conclusive of the existence of a partnership. (*Coward* v. *Clanton*, 122 Cal. 451 [55 Pac. 147].) Partnership or none, indeed, there can be no doubt that the enterprise here involved was in some sort a joint adventure and that all of the defendants were participants in it. Appellants' contention that Nowling may have been engaged in a joint enterprise with the Burfords but that he was not a joint adventurer with the appellants seems to us a meaningless refinement. Taking it, then, as established that there was such a relation, how does this affect the responsibility for debts incurred by Nowling in pursuing the business of the association?

"In *Leake* v. *City of Venice*, 50 Cal. App. 462 [195 Pac. 440], involving a voluntary unincorporated association engaged in promoting a racing enterprise, it was said that:

" 'Conceding the association did not as to the members thereof, constitute a partnership in the full and generally accepted sense, nevertheless it appears that defendants were engaged in a joint venture in the nature of a partnership to which the same rules for enforcing liability for debts incurred apply.' (Citing *Ash* v. *Guie*, 97 Pa. St. 493 [39 Am. Rep. 818].)

" (See to the same point *Stitzinger* v. *Truitt*, 81 Cal. App. 502, 506 [253 Pac. 971]; *Nowell* v. *Oswald*, 96 Cal. App. 536, 537 [253 Pac. 971]; *Old River Farms Co.* v. *Roscoe Haegelin Co.*, 98 Cal. App. 331, 335 [274 Pac. 423].)

"The Supreme Court, speaking by Mr. Justice Henshaw, said in *Westcott* v. *Gilman*, 170 Cal. 562, 569 [Ann. Cas. 1916E, 437, 150 Pac. 777]:

" 'The all important difference in construing partnership and relationships of this kind as between the parties themselves on the one hand, and as between the parties themselves and those who have dealt with them on the other hand, is this: that as between the parties themselves, when the rights of no third persons are involved, the question is one

of determination merely upon the letter of the contract and the conduct of the contracting parties to each other under it. When, however, the rights of third parties are involved, the basis of the inquiry shifts materially, and the fundamental questions are, what had those third parties the right to believe from the language of the contract and from the conduct of the parties to it as affecting them, and not as affecting each other.'

"It is, as we think correctly, laid down in 33 C. J. 872 (Title Joint Adventures) that:

" 'One who is a member of a joint adventure but who is not known to be such at the time by a third person who enters into a contract with another member individually is not rendered liable to such third person for services rendered under such contract, or for damages for the breach thereof, by the fact that the contract relates to the business of the joint adventure, if the contracting member in making such contract exceeded his authority and had no power to bind his associates thereby.'

"That, indeed, follows from the like rule of the general law of agency thus stated in the same work (2 C. J. 842) :

" 'In the absence of estoppel or ratification an undisclosed principal is not liable on the contracts of one assuming without authority to act for him, or on contracts made by his agent in excess of his authority or not in the course of his employment.'

" (*Harder* v. *Continental Printing Co.* [64 Misc. Rep. 89] 117 N. Y. Supp. 1001.)

"If there is one thing undisputed upon the testimony, taken as a whole, it is that, though the enterprise was in some sort a joint one, and, though there is in the testimony of Nowling and Burford much loose talk, largely in the nature of conclusions of the witnesses, about what Nowling was authorized to do, it was clearly understood by all the associates that all the material bills were to be paid from the mortgage loans, and that they all understood the writings to negative any idea that appellants should be holden for them.

"We think it clear from the record that Nowling had no actual authority from the appellants to bind them to any personal liability for lumber bills. As between the parties their arrangements will be given effect.

■ "If, then, there is any basis for the trial court's finding that appellants participated in ordering from the plaintiffs the merchandise mentioned in the complaint and agreeing to pay for it, it must rest on some apparent authority to Nowling to represent appellants in so doing. While appellants admit having originally gone with Nowling when he first talked to the Hansens, and while one of the Hansens, who so far as appears is the only one with whom Nowling talked, as we saw, testified that Nowling, in negotiating with him, said that there were 'others' interested, and while Nowling says that in such negotiations he specified Cole and Owen as responsible men interested with him, yet as Hansen testifies that he did not even recollect that Nowling had mentioned appellants by name, it is clear that in furnishing the lumber the plaintiffs could have placed no particular reliance on appellants' association with Nowling, or on appellants' responsibility. They may have understood generally that there was a group of persons involved, though no group name was used and no individuals were apparently considered by them, other than Nowling and Burford, whose names alone seem to have made any impression on them. It seems clear that this evidence is too tenuous to support any claim of estoppel, or any theory that the plaintiff is entitled to recover as against the appellants by reason of reliance by the latter on any ostensible agency. It was said in *Nofsinger* v. *Goldman*, 122 Cal. 609, 614 [55 Pac. 425, 427], with respect to an ostensible partnership, and it may be said by analogy with respect to an ostensible agency claimed to result from a joint enterprise, that:

" 'The rule of responsibility and liability declared in section 2444 of the Civil Code is founded upon the equitable principle of estoppel. One who has suffered another to give credit or incur a liability upon the strength of his representations made or permitted, that he is in fact a partner will not thereafter be allowed to deny those representations. But as is declared in the succeeding section of the code (2445), no one is liable as a partner who is not such in fact, excepting as provided in section 2444.'

"It is apparent from the testimony of Mr. Hansen that credit was not given to Nowling by reason of his statement, if he made any, of the relation of the appellants to the enterprise.

"In these circumstances the finding of the trial court, in so far as it determines that the appellants participated in the purchase of the goods, wares and merchandise from the plaintiffs and in the agreement to pay for the same, is, it seems to us, without any substantial support in the evidence."

Respondents did not, by their own admission, part with their goods on the faith of payment by the appellants. We may also add that the equities of the transaction, so far as all the parties are concerned, are not known to us.

The judgment, as it respects Cole and Owen, is reversed.

Shenk, J., Langdon, J., Preston, J., Waste, C. J., and Richards, J., concurred.