[Civ. No. 8284.   Third Dist.   Apr. 19, 1954.]

SNODY MARTIN et al., Appellants, v. KING
HENDERSON, Respondent.

John W. Finley for Appellants.

Whitten & Fortino for Respondent.

SCHOTTKY, J.—Plaintiffs, husband and wife, commenced an action against defendant Henderson and several fictitious defendants, the complaint stating two causes of action: the first to quiet title to a house and lot; and the second to recover an overpayment alleged to have been made by plaintiffs to defendants. Defendant Henderson filed an answer substantially admitting the allegations of plaintiffs' first cause of action, denying the material allegations of the second cause of action, and also filed a cross-complaint against plaintiffs stating two causes of action: the first being on an alleged indebtedness for labor and materials furnished on an open book account; and the second being on an account stated. No other defendants were served or appeared in the action. Plaintiffs' title to the house and lot were quieted by a judgment on the pleadings on the first cause of action prior to the trial. The case was tried by the court without a jury and the court found that there was no definite contract between the parties for the construction of a home as alleged by plaintiffs, and that defendant Henderson did furnish labor and materials to plaintiffs for which there was due him a balance of $1,556.65. Judgment was entered in accordance with said findings and plaintiffs have appealed from said judgment.

It appears from the record that appellants wanted to build a house on a lot which they owned in Chico, California, and that in April, 1948, they discussed the matter with respondent who was then a licensed building contractor. Respondent quoted a price of $6,500 as the cost of constructing the house in accordance with blueprints furnished by appellants and plans and specifications prepared by respondent. It was contemplated that the construction would be financed through an F.H.A. loan from one of the local banks, and the papers necessary for the loan were also prepared. One or two local banks were approached in the matter, but the loan was refused. Thereafter, on about May 1, 1948, respondent commenced construction of the house. There was no written contract between the parties regarding this work, and the nature

and terms of their agreement are in dispute. Appellants testified that respondent made a firm commitment to building the house for $6,500, appellants to make a down payment of $300 and to pay the balance in installments of $50 per month. Respondent testified that the price of $6,500, quoted by him, was contingent upon the loan being obtained, and that when the loan was refused no specific price was agreed upon. The arrangement, according to respondent's testimony, was one of mutual help, as follows: Mr. Martin, one of the appellants, was to help respondent tear down a building located in Chico, and respondent was to help appellants build their house. Appellants were to reimburse respondent for the cost of new materials and labor (other than his own services) furnished by him, and were to pay him $50 per thousand for lumber obtained from the dismantled building and used in the construction of the house. Appellants were to pay him $300 at the outset, and thereafter at the rate of $50 per month.

Various workmen were employed by respondent in the construction of the house during May and June, 1948, and a couple of them worked there for a short time in August. Respondent himself worked on the house from time to time, until early October, 1948, when he quit. At that time the house was only partially completed. Respondent testified that he had received only $400 in cash from appellants and that the last payment, included in this total, had been made on June 6th. He also testified that appellants owed him a balance of $1,666.50 for labor and materials furnished by him. This included the amount paid out by him to his workmen for labor on the house, the amount charged for his own work on the house, and the balance owing for materials after credit had been given for appellants' cash payments and for the amounts earned by Mr. Martin in helping to demolish the other building.

Respondent kept weekly payroll records covering his entire payroll. Work performed on appellants' house was shown by the letter ''M'' entered after the employee's name on the payroll record. In determining the quantity and kind of materials furnished respondent made his computation from the blueprints, figuring from them how much lumber and other materials would be required for the work done, although the extent of the work itself was in dispute. This computation was made after commencement of the action and in response to appellants' demand for a bill of particulars. Re-

spondent testified that the price of $100 per thousand, which he charged for new lumber, was an average price as shown by the invoices. A charge of $50 per thousand was made for the used lumber, and respondent testified that this was in accordance with the agreement of the parties. There is testimony showing that new lumber was used in certain parts of the structure, and salvaged lumber was used in other parts. It is obvious that respondent kept no records of the materials actually furnished by him. As to the hours which he himself worked, respondent apparently entered them in a vest pocket time book which he carried.

Respondent's contractor's license expired on June 31, 1948, and was not thereafter renewed. He testified that he did not complete the construction because he ran out of money, appellants having failed to keep up the promised monthly payments. He denied, on cross-examination, that the expiration of his contractor's license had anything to do with it.

Apparently, application for a building permit was not made until November 3, 1948. Mrs. Martin testified that respondent went with her to get the permit and that the following occurred: ''. . . so they asked King, these people, asked Henderson if he was the builder and he said 'No' he said he was just helping my husband out that he wasn't the contractor that he was helping my husband out and my husband was going to help him out or something on a house and that was all and we left, we left the permit there about a week or two weeks because we didn't have money to pay for it.'' Respondent did not apply for the permit, nor was it issued in his name.

Respondent took out a policy of fire insurance in the amount of $6,500. He testified that he obtained it in order to take care of his own materials in the house and he stated, on cross-examination, that he arrived at that particular amount because he thought the place would be worth that if it were finished. Appellants contend that this policy amount confirms their claim that there was an agreed price of $6,500.

In arguing for a reversal of the judgment appellants make three contentions: First, that there is no evidence to support the finding that there was an open book account; second, that there was no evidence to support the finding that there was an account stated; and third, that in any event the judgment cannot be sustained because respondent's contractor's license expired during the performance of the contract.

■ We shall discuss the third contention first. If respondent had entered into a contract to build the house for appellants, he no doubt would have been a contractor within the definition set out in section 7026 of the Business and Professions Code, and therefore would be unable to maintain his cross-action because of the expiration of his license. (Bus. & Prof. Code, § 7031.) However, the court found that the job was not undertaken on a contract basis, and there is substantial evidence to support this finding. Therefore, respondent, not having acted in the capacity of a contractor, was not barred by section 7031 of the Business and Professions Code from maintaining his cross-complaint. (*Harrison* v. *Shamalian*, 110 Cal.App.2d 500, 502 [243 P.2d 82].)

Appellants' remaining contentions are that the evidence does not support the court's findings that there was an open book account and also an account stated. As hereinbefore stated, respondent's cross-complaint contained two counts: one for labor and materials furnished on an open book account; and the other on account stated. The trial court found, in part, "That the defendant King Henderson supports the allegations of the cross-complaint on file herein, and in fact shows that said defendant did furnish certain materials and labor to the plaintiffs in the construction of said residence."

It is clear that the court found that there was no definite contract between appellants and respondent; that respondent had furnished labor and materials to appellants for which there was a balance due of $1,556.65, and it is clear, also, that the evidence amply supports such findings. There is no merit in appellants' contention that there is a fatal variance between pleading and proof. ■ For as stated in *Hansen* v. *Burford*, 212 Cal. 100, at page 107 [297 P. 908]:

". . . The distinction, as a matter of pleading, between a book account and an ordinary contract debt not founded on a writing is only important when, as in *Wright* v. *Loaiza*, 177 Cal. 605 [171 P. 311], the statute of limitations is involved and where the question arises whether suit may be commenced within four years, or must be begun within two years after the cause of action has accrued. In the present case, all the transactions were had within two years before the complaint was filed. In these circumstances the distinction between pleading a book account and pleading an indebtedness, generally, seems to us inconsequential."

In the instant case all of the transactions were had within two years prior to the filing of the cross-complaint and would

not be barred by the statute of limitations whether the complaint was based upon an open book account or an ordinary contract. Furthermore, appellants did not plead the statute of limitations in their answer to the cross-complaint.

It appears from the record that the case was fully tried on its merits, there being a sharp conflict in the evidence. Appellants at no time during the trial made any objection or contention that there was a variance between the pleadings and the proof, and we are convinced that if such objection had been made, the variance could easily have been cured by an amendment deleting the phrase "on an open book account" from the first paragraph of the first count of the cross-complaint. ██ An objection of variance between allegations in the pleadings and the proof is deemed to be waived where it is not raised at the trial. (*Colbert* v. *Colbert,* 28 Cal.2d 276, 281 [169 P.2d 633].) ██ Furthermore, as stated in *Hayes* v. *Richfield Oil Corp.,* 38 Cal.2d 375 [240 P.2d 580], a variance between the allegations of a pleading and the proof will not be deemed material unless it has actually misled the adverse party to his prejudice in maintaining his action or defense on the merits, and a variance may be disregarded where the action has been as fully and fairly tried on the merits as though the variance had not existed (citing Code Civ. Proc., § 469, and cases). Appellants have not shown wherein they were prejudiced by the variance. And in *Swanson* v. *Hempstead,* 64 Cal.App.2d 681, 682-683 [149 P.2d 404], the court said:

"We recognize that in the administration of justice pleadings are a means to an end, not an end in themselves, and that an issue which has been tried and determined should not be removed from the foundation of the resulting judgment just because it was not an issue within the framework of the pleadings. Where, however, the judgment rests upon the determination of issues which were neither foreshadowed by the pleadings nor understood by the parties to be in dispute at the trial, and which determination is the result of one party's failure to produce evidence of whose need he has had no warning, we have a case where the departure from the pleadings may not be merely technical, but substantial, resulting in a miscarriage of justice."

The judgment is affirmed.

Van Dyke, P. J., and Peek, J., concurred.