[Civ. No. 6193. First Appellate District, Division One.—April 30, 1928.]

L. H. BISSELL, Respondent, v. J. CHARLES KING et al., Defendants; GEORGE W. LAMB, Appellant.

Corby & Selby and W. C. Sharpsteen for Appellant.

J. W. O'Neill for Respondent.

CAMPBELL, J., *pro tem.*—This action is upon a promissory note brought against J. Charles King and George W. Lamb, individually and as copartners doing business under the firm name and style of King & Company and King & Company, a copartnership.

King & Company is the name of a partnership composed of appellant Lamb and the defendant King. The partnership was formed for the purpose of conducting the business of draying. King was to manage the business, but under the articles of copartnership executed November 1, 1906, had no power to incur any indebtedness other than for current expenses. King agreed to keep accurate books of account which were to be always open to the inspection of appellant and appellant was not required to devote any of his time to the business. On January 1, 1922, an agreement was entered into by the terms of which appellant agreed to sell to King his interest in the partnership for a specified sum, which was to be paid in installments of not less than $500 a month. King agreed to pay all of the debt and liabilities then existing and all that might be incurred and to save appellant harmless against such debts and liabilities. It provided that the execution of the agreement should not dissolve the copartnership and that the same should not be dissolved until the payment of the final installment of the purchase price and the performance of all of the conditions of the agreement, and further provided that King should not contract any obligations other than those incident to the copartnership business.

Subsequent to the execution of this second agreement in January, 1922, Lamb took no part in the business and the business was managed and carried on by King. In 1922 respondent was told that Lamb had sold his interest in the partnership to King. Concerning this information respond-

ent testified: "I had a conversation with Mr. Lamb concerning his selling out his interest in King & Company to King. · It was in the Ferry building and he told me he had sold out to King. I absolutely believed his statement. I had no reason to doubt it. Mr. King also told me he had purchased the interest of Lamb in the business. This was shortly after Lamb had given me the information in April or May." Lamb testified that he recalled having a conversation with respondent in the Ferry building in which he told respondent he had sold out to King; that he said to respondent: "I have signed a contract to sell to him, but it will take a long time for him to pay for the interest."

■ Respondent, subsequent to the conversations with Lamb and King concerning the disposal or attempted disposal of Lamb's interest to King, loaned money to King & Company, taking the note of the partnership, and it being—as we held in *Jacobson* v. *Lamb, ante,* p. 405 [267 Pac. 114], —a general partnership, bound Lamb as a partner of King, irrespective of whether or not respondent thought Lamb owned an interest in the partnership, as a partner's liability is measured not by the impression a third party dealing with the partnership may have respecting his interest in the partnership, but is measured by the fact whether or not he is a partner. ■ Thus in cases of secret partnership and dormant partners, a creditor is entitled to recover from all the partners when discovered, though the debt was not originally charged to all (*Kennedy & Shaw* v. *Taylor,* 3 Cal. Unrep. 697 [31 Pac. 1122]), and even though one partner holds himself out as the sole owner, the ostensible partner is the agent of the dormant one, and the latter is bound by his representations (*Willey* v. *Crocker-Woolworth Nat. Bank,* 141 Cal. 508 [75 Pac. 106]).

That Lamb was in fact a partner with King in the firm of King & Company is not disputed, but it is claimed that the promissory note was made and delivered without the authority, assent or knowledge of Lamb and not for the use or benefit of the partnership.

Reverting a moment to the conversation between respondent and Lamb with respect to the sale of Lamb's interest in the business to King, did respondent believe that Lamb had sold his interest to King outright, or did he gather the impression, not that Lamb had sold his in-

terest to King, but that he had agreed to sell it to him when he could pay for it—that King was buying his interest and paying for it in installments and that it would be a long time before he completed his payments and succeeded to the interest? Appellant stresses the fact that respondent testified that he absolutely believed his statement and had no reason to doubt it. There is nothing in this statement to lead respondent to believe—as it was Lamb's judgment that it would take King a long time to pay for the interest—that at the time the note here was executed King had succeeded to Lamb's interest, nor would it matter if he had so believed, as it was not a fact and King had not acquired Lamb's interest up to the time of the commencement of the action.

During the period from January, 1922, up to February 26, 1924, King in the name of the partnership executed a number of partnership notes to International Harvester Company without the signature of Lamb. Some of these notes were paid off during that period out of the partnership funds and some were paid off by Lamb out of the partnership funds after he took charge of the business. During the same period King, in the name of the partnership and without the signature of Lamb, borrowed $10,000 from the Bank of Italy and gave a King & Company note therefor. Part of this note was paid by King out of the partnership funds prior to February 26, 1924, when Lamb took charge of the business and the balance was paid by Lamb out of the partnership funds after he took charge of the business. During that same two-year period King, without the signature of Lamb, purchased equipment from Emmons Drayage Company and paid for the same out of the partnership funds. During that same period King, in the name of the partnership and without the signature of Lamb, on four occasions borrowed money from respondent, representing each loan to be for partnership purposes, for which he gave notes signed "King & Company, J. Charles King." Each of such notes was paid by check drawn on the partnership bank account, excepting the last one, which is the subject of this action. During the same period of time Lamb never examined the books nor had them examined. Lamb made no objection at any time to the way King was running the busi-

ness. After King left Lamb paid off several notes given by King in the name of the partnership.

The basis of this suit is a promissory note in the sum of $10,000, dated January 22, 1924, payable February 29, 1924, with interest in the sum of $250, signed King & Company, J. Charles King, which sum so borrowed on such note it is stipulated was deposited in the Bank of California to the account of "King & Company, copartners." Judgment was entered in favor of plaintiff, respondent herein, and against the defendants for $10,000, also for attorney's fees—the note provided for attorney's fees—and costs, and from such judgment this appeal is instituted.

Appellant urges the following points on appeal. Respondent dealt with King as an individual and not as an agent of the partnership. Respondent had constructive notice that King had no authority to borrow money and to execute promissory notes therefor. That the partnership was what is known as a nontrading partnership in which it is presumed that a partner has no authority to execute promissory notes in the firm name. Payment of usurious rates of interest is a circumstance tending to show want of authority. King had no authority under exhibit 2 (agreement of January 1, 1922), to borrow money and execute promissory notes therefor. Borrowing money and executing promissory notes therefor, except as the act of both parties, was not an incident of the partnership business. The eighth finding must be disregarded. The court erred in its refusal to permit appellant to show that the money loaned by respondent was not used in the partnership business.

The points urged, that the partnership was what is known as a nontrading partnership in which it is presumed that a partner has no authority to execute promissory notes in the firm name, that King had no authority under the agreement of January 1, 1922, to borrow money and execute promissory notes therefor, that borrowing money and executing promissory notes therefor, except as the act of both parties, was not an incident of the partnership business, and that the court erred in its refusal to permit appellant to show that the money loaned by respondent was not used in the partnership business, are passed upon in *Jacobson* v. *Lamb, supra,* in which case the facts are similar to the facts here and wherein the same partnership of King &

Company is involved and the same party is appellant, and on the authority of that case the judgment here must be affirmed, unless the other errors assigned call for a reversal.

■ As to the point urged that respondent dealt with King as an individual and not as an agent of the partnership, it may be said that the record shows that when King borrowed the money evidenced by the note in this action he represented to respondent that the money was required to purchase equipment for the partnership, as he had on the previous occasions represented that the money was for partnership purposes, when he executed notes in the name of the partnership, and which previous notes were paid by checks signed by the partnership and drawn on the partnership account in the Bank of California, and the note here was signed "King & Co., J. Charles King," and not by King individually. This evidence supports respondent's contention that he dealt with the partnership and not with King individually.

■ As to appellant's contention that respondent had constructive notice that King had no authority to borrow money and to execute promissory notes therefor, we think the record shows the contrary—that if respondent had any notice in this respect, it was notice that King had authority. Respondent knew that Lamb and King were and had been partners for a considerable period of time; that King was in charge of the business, and would likely remain in charge for some time to come, as Lamb had told him that he had contracted with King to sell him his interest in the business, but that "it will take a long time for him to pay for the interest."

■ Appellant's assignment that finding eight must be disregarded is without merit. The court found in this finding "that in March, 1924, defendant George W. Lamb called plaintiff to his office at the Southern Warehouse Company and advised plaintiff that he had just learned of the said $10,000.00 loan made by plaintiff on January 22, 1924, and asked to see said note. Thereupon plaintiff showed said note to defendant, George W. Lamb, and defendant George W. Lamb then stated to plaintiff that he would see what he could do and several weeks later, defendant George W. Lamb stated to plaintiff that he (Lamb) was going to protect plaintiff in said note." Appellant asserts

that a reading of this finding shows that it is merely a recital of the testimony given by respondent, and is not a finding of any ultimate fact; that the court did not see fit to construe respondent's testimony that Lamb told him that he was going to protect him in the note as a promise to pay the note and make a specific finding of such promise. Appellant, however, concedes that under the well-settled rule, if the recital establishes a promise on the part of appellant to pay the note, this court may so construe the statement. Appellant further urges that unless appellant is liable on the note as a partner, the promise to pay—assuming that there was a promise—is not only unenforceable as being an oral promise to pay the debt, default, or miscarriage of another, but is without consideration, and cites us to *Comstock* v. *Breed*, 12 Cal. 286, and *Marinovich* v. *Kilburn*, 153 Cal. 638, 642 [96 Pac. 303]. The former authority deals with the question of consideration and the promise by one person to pay the debt of another, and the latter with the inability of one bound by contract to shift the burden of his obligation by assigning the contract and the assignee consenting to the assignment without the consent of the party entitled to the benefits. While finding eight does not find as an ultimate fact that Lamb in direct words promised to pay the note, yet from the finding that defendant Lamb stated to plaintiff "that he was going to protect plaintiff in said note," the payment of the note is the ultimate fact that necessarily results therefrom, and the promise to pay the note or see that it is paid is the only promise that can be implied from the protection promised, and therefore such finding is sufficient (*Coveny* v. *Hale*, 49 Cal. 556; *Mott* v. *Ewing*, 90 Cal. 231 [27 Pac. 194]; *Alhambra Water Co.* v. *Richardson*, 72 Cal. 598 [14 Pac. 379]; *Jessen* v. *Peterson, Nelson & Co.*, 18 Cal. App. 349 [123 Pac. 219]).

Even had King no authority to bind Lamb by the note in question, the testimony of respondent, which supports the finding quoted is that Lamb, after the disappearance of King and with full knowledge of the facts in regard to the loan and after seeing the note, said he would see what he could do, and later stated that he would protect him in the note, is a ratification of the act of King in signing the firm name to the note.

Ratification may be either express or implied. Here we have both. Lamb not only failed to repudiate the note when he knew the facts, but expressly agreed to take care of respondent. "Where an agent is authorized to do an act, and he transcends his authority, it is the duty of the principal to repudiate the act as soon as he is fully informed of what has been thus done in his name . . . else he will be bound by the act as having ratified it by implication" (*Ralphs* v. *Hensler*, 97 Cal. 303 [32 Pac. 243]).

This disposes of the points urged by appellant with the exception of the one with relation to the payment of usurious interest, which we do not deem it necessary to discuss.

The judgment is affirmed.

Knight, Acting P. J., and Cashin, J., concurred.

A petition by appellant to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on June 28, 1928.

All the Justices present concurred.