[Civ. No. 7562. Third Dist. Nov. 22, 1948.]

THE SCHWAEGLER COMPANY, INC. (a Corporation), Respondent, v. JOE MARCHESOTTI, Appellant.

Mazzera, Snyder & Demartini and J. Calvert Snyder for Appellant.

James C. Nichols for Respondent.

THOMPSON, J.—Joe Marchesotti, an alleged undisclosed principal in a farming partnership, has appealed from a joint judgment rendered against him and the administrators of the estate of James Tozzi, deceased, his former partner in the enterprise. The suit is for money received from plaintiff, the broker of said partnership, for its benefit. The money was

paid on drafts drawn by "James Tozzi & Co." attached to the bills of lading accompanying the shipment of three carloads of onions belonging to the partnership. They were shipped to plaintiff, as broker, for sale on the market.

The complaint is couched in two counts. The first cause is based on a common count for money had and received. The second count alleges the existence of the partnership, the drawing and payment of the drafts, the sales of the onions and the deficiency of receipts from sales to cover the money advanced, the subsequent death of James Tozzi on February 1, 1947, the appointment and qualification of the administrators of his estate, the presenting and rejection of the claims and demand for payment of the balance due plaintiff.

The court adopted findings favorable to plaintiff. It was determined that Joe Marchesotti and James Tozzi were partners engaged in the business of raising and marketing farm produce, and that James Tozzi had charge of the sales of said produce and was authorized by the partnership to sell the onions which are involved in this suit; that plaintiff was not the purchaser of the onions in question, but merely acted as broker or agent for the partnership in that transaction, and paid the drafts for the sum of $2,984.72, attached to the bills of lading therefor, as a mere accommodation to the partnership, no part of which was repaid to plaintiff except the sum of $1,492.36, and that defendants were indebted to plaintiff in a similar sum of $1,492.36 and interest from specified dates. Judgment was rendered accordingly. This appeal by Joe Marchesotti was subsequently perfected.

█ The findings and judgment are supported by the evidence. At the trial it was stipulated that James Tozzi, individually, was licensed as a produce broker. The appellant contends that plaintiff bought the onions from James Tozzi, and not from the partnership, and that, because plaintiff inspected the onions before it honored the drafts, the loss on account of the rejection by the purchasers of the shipments as inferior to the stipulated standards became plaintiff's loss. There is ample evidence to show that the onions in question belonged to the partnership, and not to James Tozzi. Mr. Marchesotti testified in that regard:

"Q. Now, after you entered into that [partnership] agreement with Mr. James Tozzi you planted some onions down in Bakersfield, did you not? A. Yes. Q. In the . . . spring of the year 1944, is that right? A. That's right. Q. And these three cars of onions that are being talked about in this trial

were part of the onions raised on that place, isn't that true? A. At that time he got them sold; I don't know nothing about to who he sold them. Q. All right. In other words, Mr. Tozzi, Mr. James Tozzi, did the selling for the partnership, is that right? A. Yes. Q. And you did the ranching? A. That's right. . . . Q. Didn't you load this three cars of onions yourself? A. Yes. . . . Q. Load them, you loaded them yourself? A. That's right. Q. Where they went you don't know? A. I don't know. Q. But you loaded them, is that right? A. I loaded them, that's right.''

It is immaterial that James Tozzi was a licensed broker of farm produce independently of his partnership with the defendant Marchesotti for production and sale of farm products. He did not consign or sell the carloads of onions which are involved in this suit as an independent broker. He shipped them as a partner and agent of the partnership firm, as he was authorized to do. The onions were shipped on May 9, 10 and 11, 1944, to plaintiff, their broker and agent, at Des Moines, Iowa, for sale. The bills of lading and drafts in question were signed by ''James Tozzi & Co., James Tozzi.'' The name of Tozzi's partner in that transaction, Mr. Marchesotti, was not disclosed. The plaintiff assumed that Tozzi had a partner, as its subsequent letter states, but it had no knowledge of the identity of that undisclosed partner. Plaintiff honored the drafts and paid them as an accommodation, thus creating an obligation of the partnership and of each member thereof. Plaintiff charged the indebtedness against James Tozzi & Company. But the credit was intended by plaintiff to be extended to the owners of the onions, who were really James Tozzi and Joe Marchesotti, copartners in the farming enterprise, as an advancement upon the anticipated receipts from their subsequent sale by the partnership's broker. That partnership obligation was recognized in a letter from James Tozzi & Company, dated April 18, 1945. After honoring the drafts in question and charging the funds on its books to the account of James Tozzi & Company, the onions were subsequently sold by plaintiff as defendants' agent to four separate purchasers, to wit, C. C. Taft Company, O. B. West Company, Grocers' Wholesale Company and Western Grocery Company. The shipments of onions were below standard quality. The carload of onions sold to Grocers' Wholesale Company at Des Moines was rejected, and subsequently sold on consignment at a great loss. The receipts from those sales were credited to James Tozzi & Company.

The balance between the aggregate sum of the drafts paid by plaintiff and the receipts from sales of the onions, less the cost of handling them and commissions due, were charged to that account, which was the sum of $2,984.72. One-half of that amount was paid by James Tozzi, and the balance of $1,492.36 remained unpaid. Herman B. Schwaegler, the president of the plaintiff corporation, testified in that regard:

"Q. And subsequently you were paid what portion of your loss on these two cars? A. One-half. Q. And the other half of the amount represented in the claim there has never been paid to you, is that correct? A. It has not."

Plaintiff reported to James Tozzi & Company the result of those sales and transactions, and demanded payment of the balance. Mr. Tozzi claimed he had paid his one-half of the total obligation and that the remaining unpaid portion was the obligation of Joe Marchesotti. Some correspondence ensued, but the balance was not paid. Plaintiff subsequently discovered that the undisclosed partner of James Tozzi was Joe Marchesotti. The written agreement of partnership between James Tozzi and Joe Marchesotti, dated January 15, 1943, was received in evidence. It shows that they were partners sharing equally in the profits and losses of "the business of farming and in buying, selling and vending farm produce." No firm name was adopted by the written agreement. That partnership was not dissolved until July 17, 1944, as shown by written agreement of the parties, which was received in evidence. The foregoing transaction and obligation occurred while the partnership was in full force. James Tozzi died February 1, 1947, and a claim for said unpaid indebtedness was duly presented to his estate and rejected, as we have previously stated. This suit was then commenced, against both parties, as a joint obligation.

The obligation having been incurred while the partnership was in full force, the partners became jointly liable for its payment. Section 2409 of the Civil Code provides in that regard:

"All partners are liable

"(a) Jointly and severally for everything chargeable to the partnership under sections 2407 and 2408.

"(b) Jointly for all other debts and obligations of the partnership; . . . ."

If it be deemed that Tozzi wrongfully omitted to disclose to plaintiff the name of his partner in that transaction, then they might be jointly and severally liable under section 2407

of the Civil Code. But that is immaterial for they were sued only for a joint liability and the judgment against them was merely for a joint liability.

The drawing of the drafts by James Tozzi & Company against plaintiff, the agent and broker of the partnership, by means of which the partnership secured credit, a part of which remained unpaid upon the sale of the onions, created an obligation against the undisclosed partner jointly with that of Tozzi. (*Bissell* v. *King,* 91 Cal.App. 420, 423 [267 P. 356]; *Jacobson* v. *Lamb,* 91 Cal.App. 405 [267 P. 114]; *Willey* v. *Crocker-Woolworth National Bank,* 141 Cal. 508 [75 P. 106]; 1 Rowley on Modern Law of Partnership § 500, p. 633.) In the Bissell case, *supra,* the court said:

". . . Thus in cases of secret partnership and dormant partners, a creditor is entitled to recover from all the partners when discovered, though the debt was not originally charged to all (*Kennedy & Shaw* v. *Taylor,* 3 Cal.Unrep. 697 [31 P. 1122]), and even though one partner holds himself out as the sole owner, the ostensible partner is the agent of the dormant one, and the latter is bound by his representations."

And in section 500 of the text of Rowley on Partnership, last cited, it is said:

". . . As a rule, he [the dormant or undisclosed partner] is liable to the firm creditors to the same extent as if he were known to the creditor at the time the credit was obtained, under the doctrine that an undisclosed principal is liable for the acts of his agent. . . . If the dormant partner be completely so, and not known as such to the firm creditor, he will be liable to the firm creditor for indebtedness incurred by the firm to the creditor during the dormant partner's connection with the firm, . . . ."

It was stipulated by appellant's attorney that the signature of "James Tozzi & Co." which was signed to the drafts in question, was merely James Tozzi individually. Nevertheless, the drafts were for the benefit of the owners of the onions, as we have previously stated. If we assume the amount of the drafts was erroneously credited to James Tozzi individually because he failed to inform plaintiff of the name of his undisclosed partner in that enterprise, that credit would create a joint obligation against appellant as well as James Tozzi. James Tozzi, as a partner with Marchesotti in the raising and selling of farm produce, became an agent with authority to sell the products and collect the selling price therefor. If he

saw fit to draw upon the broker of the partnership with its consent for the assumed selling price, and the advanced sum of money proved to be excessive under the terms of their contract, the repayment of the excess amount collected would become an obligation for which the partnership and its members, whether known to the creditor or undisclosed, would be liable. We assume Tozzi acted in that transaction as an authorized agent of the partnership in the usual and ordinary course of its business. The drawing of the drafts in advance of the actual sales of the products was apparently in the course of business and for the benefit of the partnership. Section 2403 of the Civil Code provides in part:

"(1) Every partner is an agent of the partnership for the purpose of its business, and the act of every partner, including the execution in the partnership name of any instrument, for apparently carrying on the usual way the business of the partnership of which he is a member binds the partnership, unless the partner so acting has in fact no authority to act for the partnership in the particular matter, and the person with whom he is dealing has knowledge of the fact that he has no such authority."

The appellant contends that plaintiff was the purchaser of the onions, and that he is, therefore, precluded from securing a refund of any portion of the money paid upon the drafts because he examined the produce before the drafts were paid and knew that the onions were not up to standard. He cites sections 1724 (3) and 1768 of the Civil Code, and also *Asamen* v. *Thompson*, 55 Cal.App.2d 661 [131 P.2d 841], in support of that claim. The authorities previously cited are not applicable to this case since the court found that "plaintiff was not the purchaser thereof and acted in said transaction as a broker only," and that "plaintiff paid the drafts attached to the bills of lading of said onions as an accommodation to James Tozzi and Joe Marchesotti [the partnership]." The evidence supports those findings. It is inconsistent to hold that Tozzi was shipping or selling the produce of his partnership as an independent broker. It is immaterial who the plaintiff thought was the undisclosed partner with whom he was dealing. The important question is, who was the undisclosed partner *as a matter of fact* who held a partnership interest in the property concerning which the plaintiff was dealing? Commenting with approval upon the case of *Jacobson* v. *Lamb*, *supra*, the court said in the Bissell case, *supra*:

"A general partnership, bound Lamb as a partner of King, irrespective of whether or not respondent thought Lamb owned an interest in the partnership, as *a partner's liability is measured not by the impression a third party dealing with the partnership may have respecting his interest in the partnership, but is measured by the fact whether or not he is a partner.*" (Italics added.)

The appellant asserts that the judgment against him is invalid under the rule with respect to negotiable instruments because his name did not appear in the signature to the drafts. In support of that contention he cites *Pratt* v. *Hopper,* 12 Cal.App.2d 291 [55 P.2d 517], and *Lady* v. *Thomas,* 38 Cal. App. 2d 688 [102 P.2d 396]. We are of the opinion those cases are inapplicable to the facts of this case. Those suits were *direct actions upon promissory notes* given to secure trust deeds of real property. In the Pratt case the note was signed only by Mitchell Mayer individually. The signature contained no language, such as "& Co.," which was used in the drafts in this case, to indicate that any other person, disclosed or undisclosed, was interested therein. In the Pratt case the plaintiff had previously recovered judgment upon that note in another action against the agent. The court properly held that the alleged undisclosed principal was not liable in that suit *upon the promissory note.* In the Lady case the suit was also a direct action upon a promissory note signed only by Mr. and Mrs. James H. Thomas. There was no indication from the signatures on the note or trust deed in that case that any other undisclosed person was interested in that transaction. After the execution of the note and trust deed the instruments were transferred to Philip L. Wilson. He was a party defendant in that suit as an alleged undisclosed principal. The court rendered judgment against Mr. and Mrs. Thomas, but held that Wilson was not liable in the suit upon the promissory note. That judgment was affirmed. This court said:

". . . The trial court properly held that the undisclosed principal was not liable under such circumstances. Under the Uniform Negotiable Instruments Act adopted by California and other states of the Union, it is uniformly held that a suit may not be maintained on a promissory note against an undisclosed principal whose signature does not appear thereon, unless the note is signed by use of his trade or other assumed name. (Citing authorities.)"

But the Lady case clearly distinguishes between *a direct action upon a promissory note* or other negotiable instrument and a suit independently of the negotiable instrument for the recovery of the consideration received therefor. The last mentioned exception to the general rule with respect to negotiable instruments is recognized by all the authorities. In 3 Corpus Juris Secundum, page 175, section 247, it is said:

". . . Where the undisclosed principal has obtained the benefits of the transaction in which the note was given by the agent, which in equity he ought not to retain, the third person may reject the note and recover on the common counts or on the original consideration for the contract."

And in 1 Restatement of the Law of Agency, page 381, section 151 (d), it is said:

"Although a principal is not liable as a party to a sealed instrument in which he does not appear as such, he may be subject to quasi-contractual or other liability, as where he has received the benefits of the contract."

Section 3099 of our Civil Code recognizes that exception to the general rule. It provides that:

"No person is liable *on the instrument* whose signature does not appear thereon, except as herein otherwise expressly provided. But one who signs in a trade or assumed name will be liable to the same extent as if he had signed in his own name." (Italics added.)

We conclude that the foregoing general rule with respect to liability of persons whose signatures do not appear on negotiable instruments has no application to the facts of this case. The drafts were signed by "James Tozzi & Co.," for the benefit of the partnership which actually received credit for the full amount. That money advanced by the broker on the shipments of onions for sale by him was not fully repaid. Moreover, this is not a suit upon the drafts, or upon any negotiable instrument. The drafts had been paid and the proceeds were intended to be credited to the owners of the onions who were the members of the partnership. This action is for money had and received, on account of a partial failure of consideration. There was an implied agreement to repay any portion of the money so advanced in excess of the receipts of sales, less the costs of sales and commissions agreed upon. Clearly this case comes within the exception to the general rule previously stated.

■ The appellant may not complain of a joint judgment against himself and the estate of his former partner for failure

on the part of plaintiff to elect between a choice of liability against the two partners jointly or against the estate of the deceased partner as an agent. The representatives of the estate do not complain of that judgment. They failed to appeal. That right of election was waived by failure to demand an election during the course of the trial. (*Craig* v. *Buckley*, 218 Cal. 78, 81 [21 P.2d 430] ; *Klinger* v. *Modesto Fruit Co., Inc.*, 107 Cal.App. 97, 101 [290 P. 127] ; *Hansen* v. *California Bank*, 17 Cal.App.2d 80, 102 [61 P.2d 794] ; *Sears* v. *Whiston*, 139 Cal.App. 682, 686 [34 P.2d 818].)

The judgment is affirmed.

Adams, P. J., and Peek, J., concurred.