[Civ. No. 17338. First Dist., Div. One. Sept. 25, 1958.]

NELS E. NELSON, INC. (a Corporation) et al., Plaintiffs and Respondents, v. J. H. TARMAN, Appellant; ALBERT M. BURT, Cross-Complainant and Respondent.

*Assigned by Chairman of Judicial Council.

Orlando J. Bowman for Appellant.

Hoffman & Winkler for Plaintiffs and Respondents.

Wright & Pearson for Cross-Complainant and Respondent.

BRAY, J.—Defendant Tarman appeals from a judgment against him and defendant Van Vleck in favor of nine plaintiff-materialmen for separate amounts totalling $13,585.24 and in favor of cross-complainant Burt for $3,550 as damages in lieu of specific performance of a contract for the sale of a house.*

## QUESTIONS PRESENTED

1. Was the pleading of joint venture eliminated by the "amended and supplemental complaint?"

2. Is the finding of joint venture supported?

3. Is the finding of joint venture one of fact?

4. Did the court fail to find on a material issue?

5. Alleged error in refusing to permit defendant Tarman to file cross-complaint against Van Vleck.

6. Did the court err in dismissing Bank of America as a defendant?

7. Was sending letters by plaintiffs to the trial judge after submission prejudicial?

## RECORD

The complaints of the materialmen were consolidated for trial, and were identical in their allegations except for the amounts sought. There were two causes of action, one for foreclosure of mechanics' liens, the second for materials and services. Both counts alleged that the materials and services were furnished at the request of defendant Van Vleck and used in the construction of houses on property of defendants J. H. and Bessie Tarman, which houses were being constructed by defendants J. H. and Bessie Tarman and Van Vleck as a joint venture, and that all material and labor was furnished with the knowledge and consent and at the request of said Tarmans. Defendant Van Vleck defaulted. The Tarmans denied the allegations concerning joint venture. After the action was tried and submitted for decision, plaintiff moved to file an "amended and supplemental complaint" to conform

---

*Subsequent to the effecting of this appeal, defendant and appellant Tarman and cross-complainant and respondent Burt filed written stipulation in this court that the judgment in favor of respondent Burt and against appellant Tarman be reversed and that the trial court be directed to enter judgment in favor of appellant Tarman on the cross-complaint of said respondent Burt. See order at end of this opinion. No further mention of the Burt cross-complaint and Burt judgment will be made.

to the proofs. This complaint set up three causes of action: (1) alleging an oral third party beneficiary contract between Tarman and Van Vleck; (2) such a written contract, and (3) an agency and employee relationship between Tarman and Van Vleck. Also the parties stipulated to eliminate the lien foreclosure claims as the houses and lots had been sold at trustee's sale under deeds of trust held by Bank of America which were superior to the mechanics' liens.

The court found that Tarman and Van Vleck were in a joint venture in the construction of the homes and gave plaintiffs personal judgment against both. It found against plaintiffs on the three theories set up in the amended and supplemental complaint.

### 1. *Amended and Supplemental Complaint.*

As stated, both counts of the original complaint, in addition to alleging that the materials and labor were furnished with the knowledge and consent and at the request of Tarman, alleged that in the construction of the houses Tarman and Van Vleck were engaged in a joint venture. The three causes of action in the amended and supplemental complaint are inconsistent with those in the original complaint. The filing of the second complaint appears to leave the pleadings in a confused situation. The second complaint incorporated by reference certain allegations of the first complaint but did not incorporate any of the joint venture allegations.

Defendant contends that the second complaint superseded the first one and therefore there was no cause of action on joint venture, and, as the court found against plaintiff on the allegations of the second complaint, there is no pleading of joint venture to support a finding and judgment on that ground.

██ Although technically an amended complaint will supersede the original complaint unless there is something in the former showing that it is to be considered merely an amendment to the complaint and a "supplementary" complaint is supposed to deal only with facts arising subsequently to the filing of the original complaint and has nothing to do with amendment to conform to the proofs,* it appears in this case that regardless of its title, the second complaint was intended to be additional to the original complaint and not in substitution of it. ██ Although entitled "amended and

*See *Giddings* v. *76 Land & Water Co.* (1895), 109 Cal. 116 [41 P. 788].

supplemental complaint'' it states in the beginning ''Comes now plaintiffs, and . . . file herein their *supplemental* complaint . . .'' (Emphasis added.) It alleges no facts occurring subsequent to the filing of the original complaint. The introductions to both the second and third causes of action in the second complaint state ''. . . by way of supplement to and amendment of complaint on file herein to conform to proof . . .'' Its only prayer is ''. . . plaintiffs pray judgment as is set out in the respective complaints of each of the plaintiffs on file herein.'' That the trial court understood that the pleading of the issue of joint venture was not eliminated is shown by its referring in its findings and judgment to the ''supplementary complaint'' and by its finding of joint venture. Too, the parties briefed in the trial court the issue of joint venture without any contention that it was not an issue in the case. The record fails to show that defendant offered any counter-findings showing that the pleading question had been raised. According to the record no question of the sufficiency of the pleadings to raise the issue of joint venture was raised until the hearing of the motion for new trial. It was too late to raise it then and now. Moreover, ''It is not what a paper is named, but what it is that fixes its character.'' (*Parnham* v. *Parnham,* 32 Cal. App.2d 93, 96 [89 P.2d 189].) Defendant was in nowise misled by the second pleading. He had abundant opportunity to, and did, brief the question of joint venture. ''No error or defect in a pleading is to be regarded unless it affects substantial rights. . . . Moreover, the matter of pleading becomes unimportant when a case is fairly tried upon the merits and under circumstances which indicate that nothing in the pleadings misled the unsuccessful litigant to his injury.'' (*Buxbom* v. *Smith,* 23 Cal.2d 535, 542, 543 [145 P.2d 305].)

### 2. *Joint Venture.*

While the evidence probably is sufficiently conflicting to support a contrary finding, there is plenty of it to support the finding that Tarman and Van Vleck were engaged in a joint venture. It is conceded that none of the plaintiffs supplied labor or materials at anyone's request other than Van Vleck's and that they did not know Tarman's connection until after the labor and material had been supplied. The evidence supporting the finding follows: Van Vleck was a building contractor. In May of 1952, Tarman, for whom Van

Vleck had previously worked, told him that he had 59 lots available in Hayward Heights. Tarman offered Van Vleck the three best lots for $4,250 and the remainder at a later date for a lower price. Van Vleck accepted the three and Tarman said he would put a deed of them in escrow. Two or three weeks later Tarman asked Van Vleck to sign a note for $4,250 for the lots. This Van Vleck did. To obtain construction loans Van Vleck gave the Bank of America a deposit receipt as evidence of title. It showed Tarman as seller, Van Vleck as buyer, and a cash price of $4,250. Van Vleck had never executed the receipt in conjunction with Tarman or delivered it to him. August 10, 1952, Van Vleck started construction of the houses on the lots. In the middle of October, Tarman asked that the property be deeded back to him as he needed the deed to show that the property was a part of his assets. He stated that he did not intend to record the deed but would hold it until the houses were completed and sold, which would enable him to put in escrow a demand for the $4,250. Van Vleck executed the deed and on November 10 Tarman recorded it. Van Vleck did not discover that it was recorded until sometime in February, 1953. Plaintiffs furnished materials and labor for the construction of the houses. Eventually Van Vleck got behind in his payments to them and was unable to obtain the remainder of the progress payments on the construction loan. In January, 1953, at a time when the houses were substantially completed, Van Vleck was employed by Tarman to supervise the subdividing of some of Tarman's acreage at Paradise, being paid weekly a salary and expenses. About March 2, 1953, Tarman told Van Vleck that he, Tarman, would take care of all work to be done on the Hayward houses and would pay the bills therefor, and would sell the houses, as Van Vleck would be better off working in Paradise for Tarman. Shortly thereafter Van Vleck signed a letter prepared by Tarman, to the Bank of America, stating that Tarman was authorized to issue instructions for the disposition of construction money so that all bills outstanding against the three houses in Hayward and one in Oakland would be settled. Tarman, in a letter which at the trial was stapled to the last mentioned letter and which Van Vleck claimed never to have seen, informed the bank that he agreed to deposit sufficient funds in a certain escrow account to cover all liens on the three lots with instructions to release the liens in conjunction with the sums which the Bank of America was holding for Van Vleck on the construc-

tion loans. Tarman stated that he meant that he would deposit funds from the sale of the homes. Tarman told Van Vleck to forget the Hayward job as he was taking care of it; it was his field. In April of 1953 there was a conference at the bank at which Tarman and Van Vleck and the banker were present, at which after considering the financial status of the houses, Tarman stated that he would take over the deal, sell the houses, and pay all the bills. Van Vleck testified that he did not tell Tarman that he could have any of the profits from the construction and sale of the houses, but that as the lots were not worth $4,250, Tarman because of the artificial value would share any profit resulting. The Veterans Administration issued a certificate of reasonable value valuing the houses each at a minimum of $12,000 with $1,400 allocated to the land. Van Vleck testified that from May, 1952, until November 10th he was the owner and operator of the project but that on the latter date Tarman became the owner. In a prior deposition Van Vleck said that he had no agreement to share the profits and was constructing the houses on his own account. At the trial, he explained that at the deposition he was not given an opportunity to explain that he was going to pay for the lots by offsetting their price by an amount owed him by Tarman on another deal.

On May 11, 1953, a creditors' meeting was held at Tarman's office, at which about 15 materialmen and Tarman were present. Tarman said that he would pay all of the bills if the creditors would take a certain discount. Tarman's son, both before the meeting and in Tarman's presence at the meeting, stated that Tarman was going to see that all bills would be paid. Tarman did not deny it. Plaintiff Nelson testified that at this meeting Tarman had an account showing that Tarman had taken over and was selling, or trying to sell, the houses. Tarman included his claim for $4,300 and one for 5 per cent of the sales prices of the houses as a commission. Tarman then agreed to pay off all of the debts, instructed the creditors to send their bills to the title company and gave them an escrow number.

Nelson further testified that prior to this meeting, Tarman stated that Van Vleck was a poor business man and that Tarman had to take over the jobs on the three houses, and that he was going to pay all the bills; that Nelson need not segregate his bills between materials for the three houses and a fourth belonging to Tarman.

Tarman testified that he signed the Van Vleck deposit

receipt and received Van Vleck's promissory note. On July 1, 1952, Tarman deeded the three lots to Van Vleck with Van Vleck's deed back executed in the same month. Both deeds were placed in escrow until November 10, when, without consulting Van Vleck, he had Van Vleck's deed to him recorded. February 10, 1953, Tarman signed and recorded notice of completion on all three houses. Tarman denied making the promises of payment.

 The facts and the reasonable inferences therefrom support the joint venture finding. They show that Tarman and Van Vleck were associated as employee and employer and also in other ventures; that Van Vleck considered himself subject to direction by Tarman as illustrated by Tarman having Van Vleck stop work on the three houses and go to Paradise, by Tarman recording the deed back without consulting Van Vleck, by Tarman having Van Vleck sign the letter of authorization to the bank; that the two agreed to build on the three lots as a pilot project looking toward the development of the remainder of the lots; that they executed a deposit receipt to get a construction loan; that Tarman would get a profit from the price for the lots, with the remainder of the profit to be used to adjust equities between them; that they commingled goods and services on the jobs (three houses and another one belonging to Tarman which was being remodeled) ; Tarman paid various bills on the three houses; Van Vleck told plaintiff Robello that he and Tarman were together; Robello called the credit association for material dealers and was told that the construction was a joint venture;* Tarman made statements that the project was "his job," "his field"; and Tarman told various people including Van Vleck that he would pay all bills.

 A joint venture has been defined as an undertaking by two or more persons jointly to carry out a single business enterprise for profit with its existence dependent upon the intention of the parties as shown by an express agreement or by inference from their acts and conduct. The requisites are stated to be: (1) community of interest in the enterprise; (2) a sharing of profits and losses; (3) joint participation in the conduct of the business. *Lasry* v. *Lederman* (1957), 147 Cal.App.2d 480, 485 [305 P.2d 663] and *Beck* v. *Cagle* (1941), 46 Cal.App.2d 152, 161 [115 P.2d 613] add thereto the element of a close and even fiduciary relationship between the parties.

*No objection was made to the testimony on this subject.

There is a difference in the determining of the relationship where third parties are involved, as here, and where the issue is only between the parties themselves. Particularly appropriate here is the statement in *Westcott* v. *Gilman* (1915), 170 Cal. 562, 568-569 [150 P. 777, Ann.Cas. 1916E 437] : *"In truth, the existence or nonexistence of a Partnership in any case cannot be determined by the method appellant adopts, of dissecting the whole relationship into broken parts and members, and studying each disjointed fragment as though it were the complete whole.* A partnership, especially where, as here, the rights of third parties are involved, is to be determined by the contract, taken with the conduct and the dealings with the world of those who are parties to it. If that contract and if those dealings, so far as the world is concerned, measure up to the partnership relation, with the joint duties and liabilities attaching thereto, then, so far as third persons are concerned, who have had dealings with them, the defendants are partners." (Emphasis added.)

 Whether there was a joint venture is a question of fact for the trial court to determine from the facts and inferences therefrom. (*Milton Kauffman, Inc.* v. *Superior Court* (1949), 94 Cal.App.2d 8, 17 [210 P.2d 88].) The facts need not be shown by a specific formal agreement but may be shown by the parties' conduct and circumstances from which it is made to appear that the relationship was, in fact, entered into. The law then fixes their rights. (*San Francisco Iron etc. Co.* v. *American Milling etc. Co.* (1931), 115 Cal. App. 238, 246 [1 P.2d 1008].) And the acts and conduct of the parties engaged in the accomplishment of their purposes may speak above their expressed declarations to the contrary. (*Universal Sales Corp.* v. *California etc. Mfg. Co.* (1942), 20 Cal.2d 751, 765 [128 P.2d 665] ; *San Joaquin L. & P. Corp.* v. *Costaloupes* (1929), 96 Cal.App. 322, 332 [274 P. 84] ; see also 28 Cal.Jur.2d, Joint Adventurers, § 6, p. 484.)

 Here the appellant was to get $4,250 upon the completion of the construction as the price for the lots. In that regard, whether the price was inflated or not, it would seem that he was sharing the expected profit resultant from the venture. Whether obtaining such payment was merely payment for the lots or whether it extended beyond and bestowed an interest in the profits themselves so as to constitute the undertaking a joint venture, presents primarily a question of fact. (*Singleton* v. *Fuller* (1953), 118 Cal.App.2d 733, 741

726

[259 P.2d 687].) Yet even if considered as an interest in the profits, it alone without a showing that appellant had some power of control over the venture would not make him a joint venturer as such sharing of profits is also common in an employer-employee or lessor-lessee relationship. (*Westcott* v. *Gilman, supra,* 170 Cal. at p. 568; *Wiltsee* v. *California Emp. Com.* (1945), 69 Cal.App.2d 120, 126 [158 P.2d 612].)

 The facts of this case do not infer or show an agreement on the sharing of losses. However, that factor is immaterial as the law will supply that provision as an agreement to share profits implies an agreement to share proportionately in the losses. (*Fitzgerald* v. *Provines* (1951), 102 Cal.App.2d 529, 536 [227 P.2d 860]; *Constans* v. *Ross* (1951), 106 Cal. App.2d 381, 389 [235 P.2d 113].) Furthermore, if the agreement of the parties is contrived so as to allow a party to escape liability for loss, the law will not permit it and will construe the relationship as a joint venture. (See *San Joaquin L. & P. Corp.* v. *Costaloupes, supra,* 96 Cal.App. at p. 334.)

 There is sufficient evidence to infer that appellant had some control over the venture. He recorded the deed back without consultation as well as later filing the notice of completion. He also told Van Vleck to work up in Paradise and that he would take care of the project in Hayward. There are also the statements made to two respondents as well as the letters to the bank, one of which he had Van Vleck sign. It could be said that Van Vleck had supervision of the actual construction while appellant exercised overall control with particular concern with financial matters. It is not necessary that the parties to a joint venture have equal control of the operation as a joint venture may exist where they do not. (*Foster* v. *Keating* (1953), 120 Cal.App.2d 435, 452 [261 P.2d 529].) The equal right of control of management problem is a result of the rule that a joint venturer, in the absence of a special agreement, does not have the right to bind the others. (See *Sime* v. *Malouf* (1949), 95 Cal.App.2d 82, 95-96 [212 P.2d 946, 213 P.2d 788].)

 In view of the fact that third parties are here involved, the complete picture of all the circumstances and statements and conduct of appellant in regard to the project support a finding that the parties were engaged in a joint venture regardless of the fact that perhaps, as between themselves, they did not consider themselves to be in such a relationship.

Tarman contends that even though there was a joint venture, there is no evidence to support the court's finding that Van Vleck was authorized to bind Tarman in the purchase of the materials or labor. While there is no direct evidence of such an authorization there is indirect evidence of it. Among other matters, Tarman's statements after the construction that he would pay the bills and that the jobs were his, his checks for payments during 1953 for various services and materials for the three houses, reasonably support an inference of authority in Van Vleck. The houses were substantially completed prior to the time that Tarman took over their management for sale purposes, sent Van Vleck to Paradise and agreed to assume payment for them. These actions, although not occurring at or during the construction, together with the other circumstances such as the recording of the deed by Tarman, are highly significant in determining what the true relationship of Tarman and Van Vleck actually was.

Defendant cites *Hansen* v. *Burford* (1931), 212 Cal. 100 [297 P. 908] and *Hayward's* v. *Nelson* (1956), 143 Cal.App. 2d 807 [299 P.2d 1013], which held that notwithstanding a joint venture relationship, one joint venturer is not liable for the purchase by his coadventurer of materials and services for the venture where the purchasing coadventurer had no authority to use the other's credit and did not lead the materialmen to believe that he had such authority and where the materialmen did not know of the relationship but relied upon the purchasing coadventurer for payment. Our case is distinguishable from those cited in that here the purchasing coadventurer had the authority to make the purchases. The mere fact that the sellers did not know of Tarman's relationship to Van Vleck does not relieve Tarman of liability, and does not preclude the third parties from being able to hold both joint venturers liable. If the law were such that that fact would prevent liability, then all the rules relating to the liability of an undisclosed principal would be meaningless. ▪ As this court stated in *Luce* v. *Sutton*, 115 Cal.App. 2d 428, 433 [255 P.2d 352] : " 'It is a settled rule of the law of agency that a principal is responsible to third persons for the ordinary contracts and obligations of his agent with third persons made in the course of the business of the agency and within the scope of the agent's powers as such, although made in the name of the agent and not purporting to be other than his own personal obligation or contract.' (*Geary St. Park & Ocean R. Co.* v. *Rolph*, 189 Cal. 59, 64 [207 P. 539].) ▪ 'A

creditor may sue an undisclosed principal when found although he may not have known of the existence of such principal at the time the debt was incurred.' (*Hulsman* v. *Ireland*, 205 Cal. 345, 352 [270 P. 948].)''

In *Wahyou* v. *Kiernan*, 145 Cal.App.2d 443, 445 [302 P.2d 638], the court announced the same elementary rule, and then stated: ''Again, here . . . there was no intervening circumstance such as was present in *Rigney* v. *De La Salle Institute*, 10 Cal.App.2d 492 [52 P.2d 579], . . . which would warrant a conclusion by this court that credit had been extended exclusively to Hemley, and it is only by such a circumstance that the defendant can escape liability under the general rule previously set forth.''

If this is the rule as to undisclosed principals, and it clearly is, it certainly applies to an undisclosed partner. If a case is necessary to support such an obvious rule it is to be found in *Schwaegler Co.* v. *Marchesotti*, 88 Cal.App.2d 738 [199 P.2d 331], where the court laid down the rule by quoting from *Bissell* v. *King*, 91 Cal.App. 420, as follows (p. 743) [267 P. 356]:

'' '. . . Thus in cases of secret partnership and dormant partners, a creditor is entitled to recover from all the partners when discovered, though the debt was not originally charged to all [citation], and even though one partner holds himself out as the sole owner, the ostensible partner is the agent of the dormant one, and the latter is bound by his representations.'

''And in section 500 of the text of Rowley on Partnership, last cited, it is said:

'' '. . . As a rule, he [the dormant or undisclosed partner] is liable to the firm creditors to the same extent as if he were known to the creditor at the time the credit was obtained, under the doctrine that an undisclosed principal is liable for the acts of his agent. . . . If the dormant partner be completely so, and not known as such to the firm creditor, he will be liable to the firm creditor for indebtedness incurred by the firm to the creditor during the dormant partner's connection with the firm. . . .' '' (See generally *Lindner* v. *Friednash*, 160 Cal.App.2d 511 [325 P.2d 612].)

3. *Finding of Joint Venture.*

Defendant's contention that the finding of joint venture is merely a conclusion and not one of fact is answered in *Oakley* v. *Rosen*, 76 Cal.App.2d 310, 312 [173 P.2d 55]:

"No inhibition exists against a court's finding that an agreement was for the prosecution of a joint adventure. It was so found in *Tiffany* v. *Short*, 22 Cal.2d 531 [139 P.2d 939], and in *Hansen* v. *Burford*, 212 Cal. 100 [297 P. 908] ; and no adverse comment followed. In the latter case it was held that the finding of a joint adventure was one of probative fact." Here the court found the fact of joint venture plus the fact of Van Vleck's authority. Moreover, the findings distinguish the relationship from that of employer-agent, seller-buyer, and from that arising under a third party beneficiary agreement.

### 4. *Material Finding.*

■ Defendant contends that although the court found that Tarman purported to convey the three lots to Van Vleck it failed to find that Tarman sold them to Van Vleck, and that a stipulation made by the parties conclusively established that the transaction was a sale. Appellant's contention has no merit. The findings do not state expressly that there was no sale or that there was a sale. But the clear import of them is that there was only a purported sale and that from the time of the recording of the deed from Van Vleck to appellant, appellant held legal title. It is also implicit from the finding that Van Vleck was not engaged in the construction of the homes as an owner thereof but that appellant remained the owner at all times.

As to the purported stipulation, a reading of the transcript shows that the parties were intending to stipulate to preliminary matters, primarily to dates, without attempting to stipulate to the effect of the transactions. Counsel for appellant remarked that the statements did not state the full facts. Counsel for respondents replied that they were not intended to, that "These are only dates. I haven't gone into the other angles of it because I know some of it you won't stipulate to."

### 5. *Refusal of Cross-Complaint.*

Tarman filed his original answer August 28, 1953. March 30, 1954, he asked leave to file a cross-complaint against his codefendant Van Vleck, which was denied. In the proposed cross-complaint Tarman alleged an agreement between him and Van Vleck in which the latter agreed to pay plaintiffs' bills for material and labor and asking that the prosecution of actions brought by Van Vleck against Tarman in the Oakland-

Piedmont Judicial Court and in Solano County respectively be enjoined. In it Tarman also sought recovery on a promissory note of Van Vleck to him for $4,250 and one of $3,150, and of moneys advanced. The record does not show the reason for denying the motion to file. ■■■ A defendant may file a cross-complaint at time of answering. Thereafter, it may only be done by permission of the court. ■■■ The ruling of the trial court is within its discretion and will be reversed only upon a showing that the court abused its discretion. (*Glogau* v. *Hagan,* 107 Cal.App.2d 313, 320 [237 P.2d 329].) In that case it was held that the defendant's dereliction in not asking to file the cross-complaint for 11 months after answer filed, where a prior action based upon the causes alleged in the cross-complaint was still pending, was sufficient cause for denying the motion. ■■■ In our case the motion was not made until 7 months after answer filed. Moreover, the Solano County case referred to in the proposed cross-complaint involved other persons. To inject it into this case would have made for confusion. The issue as to the $4,250 note was already in this case. The court did not abuse its discretion.

### 6. *Bank of America.*

At the close of the case Bank of America, then a defendant, moved that the action be dismissed as to it. Plaintiffs opposed the motion. Tarman's attorney stated: ''If your Honor please, we see no evidence against the Bank of America in this case and, as a matter of fact, it is very doubtful whether or not the allegations of the complaints even state a cause of action against the Bank of America in my judgment.'' Thereupon the court granted the motion. We see no reason for discussing the merits of the court's ruling for the reason that if it was erroneous, the error was invited by defendant Tarman. ■■■ A party may not complain of error invited by it. (See *People* v. *Ocean Shore Railroad, Inc.* (1948), 32 Cal.2d 406, 429 [196 P.2d 570, 6 A.L.R.2d 1179]; 3 Witkin, California Procedure, pp. 2257-2260; 4 Cal.Jur.2d 420, 424.)

### 7. *Letters.*

■■■ On motion for new trial defendant's attorney filed an affidavit stating that he had protested to plaintiffs' attorney against the latter sending certain letters to the trial judge after submission of the case and before decision. The letters dealt merely with the effort of plaintiffs' attorneys and the bank's attorney to get the parties to agree to reduce the

homes to cash to be held to await the outcome of the case after paying the bank's loans. The letters showed that defendant Tarman's attorney refused to cooperate in this effort. As to them the court stated on the hearing of the motion for new trial: "I will say for the record right now that it had nothing to do with the method or manner in which the Court made the decision. I read the letters; as far as I was concerned, they explained the reason for certain delays and I paid no attention to them otherwise." We find nothing in the record which would justify this court in determining that the court's determination of this case was influenced by those letters.

Pursuant to stipulation the judgment in favor of respondent Burt and against appellant Tarman is reversed and the trial court is directed to enter judgment in favor of appellant Tarman on the cross-complaint of said respondent Burt. In all other respects, the judgment is affirmed.

Peters, P. J., and St. Clair, J. pro tem.,* concurred.

A petition for a rehearing was denied October 24, 1958, and appellant's petition for a hearing by the Supreme Court was denied November 19, 1958. Schauer, J., was of the opinion that the petition should be granted.