AMERIKA SAMOA BANK, Plaintiff

v.

BILL ADAMS and QUALITY FURNITURE, Defendants

and

PACIFIC ISLAND MANUFACTURING COMPANY,
INC., Garnishee

High Court of American Samoa
Trial Division

CA No. 109-89

August 17, 1992

Before RICHMOND, Associate Justice, TAUANU'U, Chief Associate
Judge, and MAILO, Associate Judge.

Counsel: For Plaintiff, William H. Reardon
 For Defendant Bill Adams, Pro Se

Judgment Against Garnishee and Modification of Original Judgment:

 Plaintiff is presently seeking a judgment in the sum of $7,115.35
in this action against the garnishee, pursuant to the garnishment laws of
American Samoa, A.S.C.A. §§ 43.1801 *et seq.* Plaintiff's application
for an order to show cause for this purpose and affidavit in support of
issuance of the order were filed on May 5, 1992. The order to show
cause was issued on May 6, 1992, and an evidentiary hearing was held

on May 20, 1992, as scheduled. Bill Adams ("Adams") and Saipai Adams ("Saipai"), his wife, appeared and testified.

## FINDINGS OF FACT

On May 27, 1987, Adams signed a promissory note on behalf of Quality Furniture, which is a domestic American Samoa corporation fully named Quality Furniture Manufacturing, Inc., in the principal sum of $12,441.26, with interest at the rate of 12% per annum on the decreasing balance of the principal, payable to the Amerika Samoa Bank (the Bank) in 48 monthly installments of $327.63 each, on the 27th day of each month beginning on June 27, 1987. The principal sum represented the combined balance of two loans by the Bank to Quality Furniture. Payments on the promissory note were made sporadically, the first one on July 15, 1987, and the last one on February 21, 1989.

On December 15, 1989, the Bank commenced this action against Adams and Quality Furniture for damages on default of the unpaid amount of the promissory note in the sum of $6,028.07, plus pre-judgment and post-judgment interest, costs of suit, and attorney's fees. Following trial on August 1, 1990, at which Adams did not appear, the Bank was awarded judgment against Quality Furniture. The written judgment, issued on August 7, 1990, is in the principal amount of $6,028.07, plus pre-judgment interest of $390.43, attorney's fees of $641.85, and costs of $55, for a total of $7,115.35.

The Bank served a notice of garnishment on the Bank of Hawaii on June 17, 1991, which did not reveal any property belonging to Adams or Quality Furniture in the Bank of Hawaii's possession or debts due to Adams or Quality Furniture by the Bank of Hawaii.

The Bank then served Adams with interrogatories in aid of judgment on August 28, 1991, which were returned on October 1, 1991 with Adams' unsigned answers. In one answer, Adams stated that he was a consultant to Pacific Island Manufacturing and was paid $200 on the 5th and 20th of each month, a total of $400 per month.

The Bank next served Pacific Island Manufacturing with a notice of garnishment on April 7, 1992. The interrogatories were answered and signed by Saipai and were filed with the Court on April 24, 1992. In one answer, Saipai stated that Adams "is not an employee or owner, partner, officer or any other of Pacific Island Mfg. Inc." The Bank followed with this proceeding for a judgment against the garnishee.

Pacific Island Manufacturing was incorporated as a domestic American Samoa corporation on June 27, 1986, with its principal place of business in Nu'uuli, American Samoa. Saipai is one of the three incorporators. According to Saipai, the present shareholders or owners and managing directors of the corporation are her sister and brother and herself. She is also the president of the corporation but does not recall when she took office. The last meeting of the board of directors was in 1991, but she is uncertain which directors attended the meeting.

Saipai states emphatically that Adams has nothing, and never had anything, to do with Pacific Island Manufacturing's business affairs. However, there are numerous significant indications to the contrary. One of Pacific Island Manufacturing's main business activities is selling furniture. Adams has been in the furniture business for some 32 years. This experience includes the operation of Quality Furniture in American Samoa, which he closed down in 1986, after a judgment of $40,000 in damages was rendered against him and Quality Furniture by this Court. He claims that he was tired of and experiencing burn-out from the furniture business. Pacific Island Manufacturing commenced business operations the same year. Both Adams and Saipai, his wife of ten years, admit that her knowledge of the furniture business was gained from him.

Pacific Island Manufacturing also operates a tour and travel agency, doing business as "Pacific Island Tour & Travel." For this activity, it registered with the American Samoa Government's Territorial Registrar in 1986, after Pacific Island Manufacturing was incorporated, a seven-day tour itinerary in American Samoa, including a daily schedule of events, as its purported "sole and exclusive property." This registered document is signed by Adams. He states that he was running the tour and travel operation for Saipai in 1986.

Saipai's knowledge of Pacific Island Manufacturing's business, as well as business matters generally, is largely superficial. In addition to her vagueness on formal corporate affairs noted above, she does not know the amount of the original investment in the corporation, which came from funds provided by her parents, or the amount invested in the beginning inventory of the business. She also did not recognize a number of technical English terms for furniture items when she was questioned about them, although this may be attributable in part to a lack of familiarity with this terminology.

More significantly, while she runs the store and at times consults with her sister and brother, she looks to Adams for advice on business

40

matters. As specific examples, she answered the interrogatories to garnishee after discussing the questions asked with Adams; and Pacific Island Manufacturing's tax returns are prepared by an accountant, but she signs them only after discussing the returns with Adams. The company's business premises are located on land that Quality Furniture leases, under a lease signed by Adams, and in turn subleases to Pacific Island Manufacturing.

Saipai left American Samoa in the early part of September 1991 and returned from California in February 1992. According to Adams, he looked after Pacific Island Manufacturing's business affairs and was paid $400 per month as a consultant for his oversight services during the first two months or so of his wife's absence. He continued to provide these services without any compensation after Hurricane "Val" struck American Samoa in the early part of December 1991, causing extensive damage to the furniture inventory at Pacific Island Manufacturing's store. The inventory damage made it necessary for Saipai to stay in California longer than intended to replace the damaged items. On-hand replenishment of the inventory was accomplished in February and March of this year.

Adams went on to explain that Saipai's continued absence required him to submit to the Government in December 1991 two business-license renewal applications for calendar year 1992 on behalf of Pacific Island Manufacturing. One of these applications was for the furniture business, while the other was for the tour and travel-agency operation. Adams signed both applications as the manager of Pacific Island Manufacturing.

Saipai stated that Adams is not now receiving any money from Pacific Island Manufacturing and that she is the sole signatory on the company's bank account. She professed that she has no knowledge about Adams' remunerative activities or any debts he may have.

Adams stated that he has no financial interest in Pacific Island Manufacturing and that his only present business activity, which began a few months ago, is in wholesale produce, dealing with a company in Los Angeles. He also stated that his only present indebtedness, except to his parents, is the one to the bank involved in this action.

DISCUSSION

41

The ultimate resolution of the present proceedings in this action depends upon the application of A.S.C.A. § 43.1811(a), which reads in pertinent part as follows:

> 43.1811 Judgment.
> (a) If it is made to appear that the garnishee was indebted to the defendant or had any of his property in his hands at the time of being served with the notice of garnishment, the garnishee shall be liable to the plaintiff . . . to the full amount of the judgment, or to the amount of such indebtedness or property held by the garnishee.

The application of this statute in this case, in turn, requires analysis of the sequential relationship of Quality Furniture and Pacific Island Manufacturing and Adams' relationship to both corporations.

The Bank's underlying judgment in this action is only against Quality Furniture as a corporation. Judgment was not awarded against Adams. The fundamental purpose of incorporating is to create a legal entity having an existence separate from that of its shareholders and thereby exempting the shareholders' property from corporate debts. The corporation laws of American Samoa recognize this purpose. A.S.C.A. § 30.0114(6). This immunity is absolute unless there are circumstances justifying disregard of the corporate entity to prevent abuse of corporate privileges, either by one or more individuals or by another corporation. B.E. Witkin, 9 *Summary of California Law*, Corporations § 12(1), at 524-25 (Bancroft-Whitney Co., 9th ed. 1989). In such cases, the issue is not whether the corporate entity should be disregarded for all purposes, but whether limiting corporate privileges will accomplish justice and defeat fraud or other unfairness in resolving the particular issues before the court. *Id*. at § 12(2); at 525.

It must be shown that the corporation is dominated or controlled by one or more individuals or another corporation. As stated in *Minifie v. Rowley*, 202 P. 673, 676 (Cal. 1921), domination or control in this context means:

> Before the acts and obligations of a corporation can be legally recognized as those of a particular person, and vice versa, the following combination of circumstances must be made to appear: First, that the corporation is not only influenced and governed by that person, but

that there is such a unity of interest and ownership that the individuality, or separateness, of said person and corporation has ceased; second, that the facts are such that an adherence to the fiction of the separate existence of the corporation would, under the particular circumstances, sanction a fraud or promote injustice.

The totality of the circumstances set forth above and the manner in which Adams and Saipai testified provide ample basis to find, and we do find, that in reality Adams was, and still is, the dominating force in control of both corporations and their alter egos. We further find from these circumstances that Adams is the dormant but nonetheless real owner of Pacific Island Manufacturing, whether or not his equity interest is shared in some manner with Saipai or any other persons. *See Nelson v. Tarman*, 163 Cal. App. 2d 714, 329 P.2d 953 (1958). The creation of Pacific Island Manufacturing simultaneously with the operational demise of Quality Furniture were Adams' means of relieving the financial pressures on Quality Furniture and continuing the same business afresh in an ostensibly different format as Pacific Island Manufacturing. While not defrauded outright, the Bank was clearly the object of unfairness. These findings lead us to recognize that the acts and obligations of Quality Furniture are also those of Adams and Pacific Island Manufacturing, as both corporations are Adams' alter egos.

In light of the present finding of Adams' alter ego relationship with Quality Furniture, the judgment in this action excluding Adams as a judgment debtor needs reconsideration. The alter ego issue was not raised during the trial of this action. Hence, this Court then had no basis to look behind the protective corporate clothing of Quality Furniture. Now that Adams' alter ego relationship with Quality Furniture has been found to exist, it is apparent that the judgment in this action requires amendment to designate the correct judgment debtors. An amendment of this nature is proper whenever the necessity becomes evident during proceedings after the judgment, so long as there was jurisdiction over the omitted defendant at the time of trial. *Thomson v. L.C. Roney & Co.*, 20 Cal. App. 2d 456, 246 P.2d 1017 (1952).

At this point, we take note that A.S.C.A. § 43.1812 precludes a judgment against a garnisheè unless the principal defendant, or in this case the judgment debtor, has had seven days' notice of the garnishment proceedings and unless a marshal's return of that notice is of record. There is a marshal's return showing service of the writ of garnishment and related documents on Adams as Pacific Island Manufacturing's

manager on April 7, 1992, 52 days before the hearing on the order to show cause. The order to show cause was served on Saipai on May 7, 1992, 13 days before the order to show cause hearing. Adams did testify at the order to show cause hearing, and clearly, he had more than seven days' notice of that hearing. However, there is no marshal's return showing service of the order to show cause on Adams or Quality Furniture.

The purpose of A.S.C.A. § 43.1812 is to ensure that the principal defendant has adequate opportunity to participate and protect his property interests in proceedings against a garnishee allegedly indebted to or holding property of the defendant. Notice of the order to show cause hearing or other evidentiary proceeding is particularly important in this respect and is the object of the marshal's return required under A.S.C.A. § 43.1812.

In this case, however, in view of Adams' actual participation in the order to show cause hearing and alter ego relationship with Pacific Island Manufacturing and Quality Furniture, the marshal's return of service of the order to show cause on Saipai is substantial compliance with the requirement of a marshal's return of service on Adams and Quality Furniture.

## CONCLUSIONS OF LAW

1. The Amerika Samoa Bank is entitled to a judgment against garnishee Pacific Island Manufacturing Company, Inc. in the sum of $7,115.35, plus interest at the rate of 12% per annum from August 1, 1990.

2. The Bank is entitled to a judgment against defendant Bill Adams individually, in addition to defendant Quality Furniture, on the underlying promissory note, dated May 27, 1987, in the sum of $7,115.35, *nunc pro tunc* to August 1, 1990; and the judgment, which was awarded on August 1, 1990, and signed on August 7, 1990, is so modified.

Judgment shall enter accordingly.

It is so ordered.