[Civ. No. 5850. Fourth Dist. July 2, 1959.]

ERNEST HOFMEISTER et al., Appellants, v. DELTA VERDE FARMS (a Corporation), et al., Respondents.

PRODUCERS IMPERIAL COMPANY (a Corporation), Respondent, v. ERNEST HOFMEISTER et al., Appellants.

Victor A. Gillespie, Rigmor Barker Cope and E. W. Miller for Appellants.

Dickenson, Sattinger & McKee, Pauline Nightingale, Conrad Lee Klein, Joseph Abihider and Ralph I. French for Respondents.

MUSSELL, J.—Plaintiffs in their first amended complaint in this action for declaratory relief, injunction and accounting, action number 29292 in the superior court, seek a judgment declaring the rights and duties of the parties under a "Farm Management Agreement." They also ask for an order restraining the defendant, Producers Imperial Company, from paying out certain funds in its possession; that judgment be rendered declaring that they are entitled to funds derived from sales of cotton from their land; and that they have judgment against the defendant, Delta Verde Farms, for the sum of $21,107.75.

On the same day on which this amended complaint was filed the Producers Imperial Company, a corporation (hereinafter referred to as "Producers"), filed a complaint in interpleader. This action, number 29349 in said superior court, joins as defendants plaintiff Ernest Hofmeister and others (hereinafter called "Kayhof"), Valley Chemical Company (hereinafter

called "Valley Chemical"), Union Oil Company (hereinafter called "Union"), Valley Insecticide Service Company (hereinafter called "Valley Insecticide"), the California Division of Labor Law Enforcement, Department of Industrial Relations, State of California (hereinafter called "Division of Labor Law Enforcement"), and Strickland Brothers.

In the complaint in interpleader it is alleged that "Producers," in connection with cotton farming operations for Delta Verde Farms, a corporation, in the processing of said cotton for ultimate sale, have collected certain sums of money to which Producers have no personal claim; that a dispute has arisen between the defendants; that Valley Chemical, Union and the Division of Labor Law Enforcement claim portions of said money by way of executed assignments; that Valley Insecticide has attached some of said money; and that Strickland Brothers, a copartnership, claim that the sum of $6,824.50 is due them for lease rental.

Delta Verde, in addition to its answer, filed a cross-complaint in which the allegations of the complaint in interpleader are admitted and in which it is alleged that Producers became indebted to Delta Verde by reason of Producers processing and selling Delta Verde's cotton crop; and that Delta Verde, in turn, is indebted to other defendants in interpleader. Delta Verde expressly admits its indebtedness to Valley Chemical, Valley Insecticide, Union, the Division of Labor Law Enforcement, Strickland Brothers and others. It is further alleged therein that the cotton from which the funds in dispute are derived was grown pursuant to a joint venture or pooling agreement between Delta Verde, Kayhof and others, under which all growing and other expenses incurred under and pursuant to the joint venture or pooling agreement were to be paid prior to the distribution of profits and that the claims of various defendants in interpleader arise out of the indebtednesses incurred by the joint venture. These allegations were denied in the Kayhof answer.

Valley Insecticide alleged in its cross-complaint that its claim has priority against the funds held by Producers; that a consent judgment was entered by it against Delta Verde and execution levied thereon, which is unsatisfied. A joint venture was alleged and it was further alleged that Delta Verde acted as agent for Kayhof.

In the answer and cross-complaint filed by Valley Chemical it was alleged that Delta Verde assigned certain sums to Valley Chemical out of the funds in the hands of Producers

and that the assignment is prior and superior to the claim of Kayhof.

The answer of Union alleged a claim for goods, wares and merchandise furnished to Delta Verde and an assignment in favor of Union on said funds in the hands of Producers.

In the answer and cross-complaint filed by the Division of Labor Law Enforcement it is alleged that Delta Verde executed an assignment of claims for labor on said funds in the hands of Producers and in their answer the Strickland Brothers claim rent due from the proceeds of the cotton crop grown by Delta Verde.

The actions for declaratory relief and interpleader were consolidated for trial by stipulation of the parties and it was further stipulated that all of the evidence introduced at the consolidated trial could be considered by the court in each cause of action.

The court, at the outset of the trial, held that because of the ambiguity in the Farm Management Agreement and because of the fact that other agreements are referred to therein, parol evidence and the other agreements could be introduced in evidence to assist the court in arriving at a determination of the rights, duties and obligations of the parties involved.

Early in 1954 or in December, 1953, J. L. Clardy, Ernest Hofmeister, Ernest Ayala and Halford E. Kelsey were all officers of, shareholders, directors or employees in a corporation known as Delta Verde Farms Corporation. This corporation was formed in October, 1953, for the purpose of growing a crop of sugar beets and other crops. There were issued 1,800 shares of stock, 300 shares each to Hofmeister, Ayala and Kelsey and 900 to H. G. Clardy. In October, 1953, Ernest Hofmeister and Ernest Ayala were operating as partners with Kelsey under the firm name of Kayhof Company. J. L. Clardy and his son, H. G. Clardy, were carrying on farming operations under a corporation known as Cali-Verde Farms. This group of individuals, over a period of time beginning in December, 1953 or January, 1954, had several conversations concerning the possibilities of procuring for themselves additional cotton allotments for their respective lands. They ascertained that such allotments under federal allotment laws could be transferred from one ranch or specified plot or parcel of land to another ranch, plot or parcel of land under two conditions only; first, that all parcels, or plots, or ranches were held by one person; or, secondly, that all parcels, plots or ranches were

held by one person or individual under a valid lease agreement. After many conversations this group of individuals worked out a scheme, plan, enterprise and combination or joint pooling undertaking in order to procure the desired cotton allotments for their respective lands. They located a ranch known as the Sweetwater Farm, which had some 200 or more acres of valid cotton allotments under the federal cotton allotment law. They decided to procure these allotments and divide them on an agreed basis. They then had Delta Verde Corporation lease the Sweetwater farm upon which were the desired cotton allotments. Cali-Verde Farms and Kayhof leased their lands to Delta Verde and, Kelsey, after he had withdrawn from Kayhof, on March 29, 1954, also leased his land to Delta Verde. By this arrangement all the farm lands involved were held by Delta Verde as lessee, thus enabling the parties to divide up the desired cotton allotments and apply them to their own lands. The lease by Kayhof to Delta Verde of the Kayhof land was dated March 17, 1954, and was for a period between February 1, 1954 and January 1, 1955. The lease was signed by Kayhof as lessor, by Ayala and Hofmeister, and by Delta Verde, by Kelsey as secretary-treasurer of the corporation. At this time all these parties were interested in both Delta Verde and Kayhof Company and were stockholders in both.

On or about March 17, 1954, an agreement, denominated "Farm Management Agreement," was entered into between Delta Verde and Kayhof and this is the agreement which plaintiff asks the trial court to construe and to determine the rights of the parties thereto. It is as follows:

### "FARM MANAGEMENT AGREEMENT

"WHEREAS, Delta Verde Farm Corp. is the Lessee for the period February 1, 1954, to January 30, 1955, of certain lands in Imperial County, California, more particularly described as follows:

"Parcel 1: About 7 acres in the Northwest Corner of Tract 230;

"Parcel 2: About 77 acres in the East one-half of Tract 230;

"Parcel 3: About 120 acres on the East side of Tract 277 and the West edge of Tract 170 lying West of the Alamo River;

"All parcels lie within Township 14 South, Ranges 14 and 15 East, 3 miles East of Brawley and 1 mile South of the Holtville Hiway.

"AND WHEREAS, KAYHOFF, a copartnership consisting of Halford E. Kelsey, Ernest Hofmeister and Ernest Ayala, is in the business of farming in Imperial County, California;

"IT IS HEREBY AGREED by and between the parties hereto as follows:

"1. Delta Verde Farms Corp. agrees to furnish to Kayhoff all financing for the production of cotton and other farm crops to be grown on the above described premises during the term of this contract and Kayhoff agrees to pay Delta Verde Farms Corp. or its assigns interest at the usual bank rates for such loans.

"2. Kayhoff agrees to manage and to farm the above described lands in a good and farmerlike manner according to the best practices followed in Imperial Valley.

"3. Kayhoff will pay all the expenses and costs of farming and shall be entitled to all of the profits.

"4. Kayhoff will be entitled to exercise its rights to all of the cotton allotment on the land described above and in addition thereto Kayhoff shall have the right to use on the above described premises sufficient cotton allotments held by Delta Verde Farms Corp. on other lands which it now has leased or may lease for the 1954-1955 cotton crop in Imperial County to permit Kayhoff to farm a total of 200 acres of cotton.

"5. This contract shall be effective from February 1, 1954 and shall terminate on January 30, 1955.

> "DELTA VERDE FARMS CORP.
> "By /s/ Halford E. Kelsey
> "Sec. Treas.
>
> "KAYHOFF
> "By /s/ Ernest Hofmeister."

Lease agreements and farm management agreements similar to those executed by Kayhof and Delta Verde were executed by Delta Verde with Kelsey and Cali-Verde Farms. Under these agreements Delta Verde was to finance the growing of cotton on all the parcels of land involved and, in order to do so, Delta Verde executed a crop mortgage covering all of the cotton crops to obtain the sum of $76,150, payment of which, in addition to the security of the mortgage, was guaranteed by the individuals named. The cotton on all the lands involved was grown, harvested and ginned in the name of Delta Verde, sold in the name of Delta Verde, and the proceeds credited on the books of the gin to the name and account of Delta Verde.

The federal cotton allotment for all of said cotton allotments was issued in the name of Delta Verde.

The record shows that the sum of $39,603.78 was received by Producers from the sale of all the cotton over and above advances made by Producers. This sum was deposited in court and the court found that it is the property of Delta Verde as the result of a joint venture entered into between J. L. Clardy, Ernest Hofmeister, Ernest Ayala and Halford E. Kelsey acting and operating under the title and name of Delta Verde Farms, a corporation. The court further found that the following claims should first be paid out of the funds held by Producers before there was any division of the profits between the joint venturers and that after said claims were paid Kayhof was entitled to $5,877.14 net profits from the cotton raised by the partners, plus $10,933.13, money advanced, and that Kelsey was entitled to the sum of $2,923.75, plus $9,673.32, money advanced. The amounts allocated to Kayhof and Kelsey were based upon the cotton acreage farmed by them. The claims allowed for first payment were

| | |
|---|---|
| Division of Labor Law Enforcement | $ 2,275.02 |
| Valley Chemical Company | 10,889.07 |
| Union Oil Company of California | 1,621.11 |
| Valley Insecticide Service Company | 6,942.50 |
| Strickland Bros. | 10,561.30. |

There is no serious contention on the part of the appellants that these claimants did not furnish materials and services in the totals stated or that the claims are erroneously computed.

Appellants contend that they were responsible only for that part of the materials and services applied to the land which they farmed and only the particular cotton crop which they cultivated. However, the trial court found that in furtherance of said joint venture and undertaking and at the special instance and request of the Delta Verde corporation, made on behalf of and acting for said joint venture, the said claimants sold and delivered goods and merchandise to the said joint venture for the use and benefit thereof and that the sums claimed were due and owing from such venture. This finding is supported by the evidence and reasonable inferences which the court was entitled to draw therefrom.

The record shows that appellants managed and farmed their lands and harvested therefrom 470 bales of cotton and delivered this cotton to Producers for ginning and sale. They received a cotton allotment through the joint venture of 50

acres, which, added to the 150 acre allotment they then had, enabled them to raise cotton on approximately 200 acres. There is testimony that the cotton and cotton seed grown by appellants and delivered to Producers was sold for $78,287.80; that the money borrowed from Delta Verde was paid in full; that the cost of appellants' crop totaled $63,679.16 and that of the money on deposit with the court approximately $30,000 was traceable to the sale of cotton raised on Kayhof lands. However, the court held that appellants were only entitled to profits from their crop after the expenses of Delta Verde were paid, including the creditors whose claims are hereinabove listed.

■ Appellants' argument that the court erred as a matter of law in holding that the "Farm Management Agreement" was ambiguous and in admitting parol evidence with respect thereto is without merit. ■ ■ In 18 California Jurisprudence 2d, Evidence, section 278, page 768, it is stated that extrinsic evidence to show the facts and circumstances surrounding the execution and delivery of the instrument and of the situation of the parties, including the object, nature and subject matter of the agreement, is admissible if the written instrument is ambiguous and if an understanding of such circumstances is necessary to ascertain the intent of the parties and the meaning of the language employed; and that evidence of this nature is admitted in order to place a trial judge in the position of the contracting parties. ■ The agreement involved is not dated and provides that Delta Verde is the lessee of the land therein described, but no provision is made therein for the payment of rent. The agreement refers to another agreement, namely, a lease, but does not name the lessor or set forth the terms of said lease. The agreement refers to cotton allotments held by Delta Verde on other lands which it has leased or may lease. While the agreement provides that Kayhof will pay all the expenses of farming and shall be entitled to all the profits, it is not clear whether such profits are limited to the cotton grown by Kayhof or whether the costs of other farming operations are to be considered. The agreement was but a part of a joint venture as was shown by the testimony admitted. Under the circumstances shown the court properly permitted evidence as to the circumstances surrounding the execution of the agreement and the various other documents executed by the parties in connection therewith. ■ Moreover, appellants did not make appropriate or timely objection to the introduction of this evidence and error

in its admission cannot be considered on appeal. (*Nuttman* v. *Chais*, 101 Cal.App.2d 476, 478 [225 P.2d 660]; *Lewis & Queen* v. *S. Edmondson & Sons*, 113 Cal.App.2d 705, 710 [248 P.2d 973].) In *Estate of Fraysher*, 47 Cal.2d 131, 135 [301 P.2d 848], it was held that evidence which is admitted in the trial court without objection, although incompetent, should be considered in support of that court's action, and that objection may not be first raised at the appellate court level.

■ The record also shows in this connection that appellants themselves introduced evidence of the circumstances surrounding the execution of the instruments and they cannot now complain of the admission of evidence which they themselves introduced. (*Ashley* v. *Rivera*, 220 Cal. 75, 79 [29 P.2d 199].)

Appellants claim that the trial court erred as a matter of law in holding that the farm management agreement in question was part of a joint venture between appellants and other defendants in the case. This claim is likewise without merit.

■ In *Nels E. Nelson, Inc.* v. *Tarman*, 163 Cal.App.2d 714, 725 [329 P.2d 953], the court said: "Whether there was a joint venture is a question of fact for the trial court to determine from the facts and inferences therefrom. (*Milton Kauffman, Inc.* v. *Superior Court* (1949), 94 Cal.App.2d 8, 17 [210 P.2d 88].)" ■ In the instant case there was substantial evidence that all parties acted in concert to obtain more cotton allotments than they were entitled to as individuals and on their own farms; that all lands involved were leased to Delta Verde and all financing was obtained through it; that Delta Verde executed one crop mortgage to secure the total loan, in the proceeds of which all the parties participated and obligated themselves individually for the repayment of the entire crop mortgage; that the marketing card for the entire acreage involved was held in the name of Delta Verde and that all parties were stockholders and all but one, officers of Delta Verde; that in order to obtain cotton allotments it was necessary that the lands be under a bona fide lease held by one person or corporation; that the equipment of the parties was pledged as security for the total loan; that all sales were actually conducted in the name of Delta Verde and the obligations incurred by it. These and other circumstances shown by the record furnish ample evidentiary support for the conclusion of the trial court that a joint venture existed. ■ ■ It is well settled that a trial judge or jury may disbelieve direct evidence and rely on circumstantial evidence to support a finding, and that even where conflicting inferences may with

equal reason be drawn from the evidence the choice of which reference-to draw rests in the judgment of the trier of the fact. (*Pierce* v. *Standow*, 163 Cal.App.2d 286, 288 [329 P.2d 44].)

Appellants' next contention is that the trial court erred as a matter of law in refusing to enforce the producer's lien of appellants pursuant to the provisions of section 1300.7 of the Agricultural Code, or in enforcing a constructive trust based thereon. Here, again, we disagree with appellants' contention. The record shows that Producers, who processed and sold the crops involved, dealt with Delta Verde as the owner and producer thereof. Kayhof, under the farm management agreement, agreed to manage and to farm the property which was leased by it to Delta Verde in order to obtain additional cotton allotments. Under the provisions of section 1300.8 of the Agricultural Code the producer has no lien superior to or against the goods where the financing of the crop has been done by hypothecating or pledging the crop itself, as was done in this case.

Finally, it is claimed that the court erred in overruling various demurrers of appellants with respect to various cross-complaints involving alleged creditors, judgment creditors or assignees of Delta Verde Farms, and in sustaining the claims of such creditors, judgment creditors, or assignees of Delta Verde Farms where the uncontradicted evidence was that such debts were not those of appellants. This argument is based on the assumption that no joint venture existed and since the evidence is sufficient to sustain the finding of joint venture, and, since the trial court found it to exist, and that the farming operations were conducted by and through Delta Verde, the debts incurred by it in connection with the cotton crops were properly charged against the funds deposited in court by Producers.

The findings herein are supported by the evidence and support the judgment. The attempted appeal from the order denying a new trial is dismissed as such an order is not appealable. (*Estate of Dopkins*, 34 Cal.2d 568, 569 [212 P.2d 886].)

Judgment affirmed.

Griffin, P. J., and Shepard, J., concurred.

A petition for a rehearing was denied July 27, 1959, and appellants' petition for a hearing by the Supreme Court was denied August 26, 1959.