Filed 4/10/26  P. v. Spivey CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## THIRD APPELLATE DISTRICT

(San Joaquin)

----

| | |
|---|---|
| THE PEOPLE,<br><br>      Plaintiff and Respondent,<br><br>v.<br><br>XAVIER DIJON SPIVEY,<br><br>      Defendant and Appellant. | C102025<br><br>(Super. Ct. Nos.<br>STKCRFE20110007804 &<br>SF119150B ) |

     In 2013, defendant Xavier Dijon Spivey was convicted of first degree felony murder.  In 2022, he filed a petition for resentencing under Penal Code section 1172.6.[1]  After an evidentiary hearing, the trial court denied the petition.  Defendant contends the trial court erred by:  (1) relying on improper evidence; and (2) applying a malice theory without proper notice.  We disagree and affirm.

---

[1] Undesignated statutory references are to the Penal Code.  Defendant filed the petition under section 1170.95.  Effective June 30, 2022, the Legislature renumbered section 1170.95 as section 1172.6 without substantive change.  (Stats. 2022, ch. 58, § 10.)  We refer to the statute as section 1172.6 in this opinion.

## FACTUAL AND PROCEDURAL BACKGROUND

### I

#### *Defendant's Trial*

In 2013, defendant was tried for first degree felony murder, robbery, and kidnapping to commit robbery. One of the robbery victims (victim) testified that on June 18, 2011, she was leaving her house with a friend. While victim and friend were walking to victim's car, defendant and codefendant Stedvieno Mayes approached them. Defendant approached victim holding a black gun "with a long black clip on it" and told her to be quiet, turn around, and open the door. After turning victim around and putting the gun to her back, defendant walked victim and friend to victim's house and told victim to unlock the door. They walked in a line back to the house: victim followed by defendant followed by friend followed by codefendant.

Inside the house, either defendant or codefendant told victim and friend to lay down. Codefendant also had a gun in his hand, a small silver .22. Victim was familiar with the .22-caliber gun because she had owned one previously. Codefendant was "resting his arm on the countertop with [the gun]." He never pointed the gun at victim and kept reassuring victim and friend they were going to be fine. Meanwhile, defendant tore up the house for about 25 minutes and said, " 'Where's the money? Where's the gun. This is not all the money. Be quiet. Don't look at me. Put your face down.' " " 'He was not calm at all. He was aggressive and he was kind of demanding.' " He was the person victim was really scared of. He took victim's and friend's purses and their contents. He also took victim's cell phone directly from her. Defendant "was the only one handling anything," while codefendant was "[j]ust standing there" with his gun "always like rested on the counter."

Codefendant then told victim and friend to get in the bathtub and count to a certain number. He told them if they did not count to that number, he and defendant would be waiting outside to make sure they did. After about two minutes, victim went to lock the

2

front door when a neighbor walked in. Neighbor had a conversation with victim for maybe one or two minutes and then ran back across the street.

Neighbor testified that victim lived across the street about four or five houses down. On the evening of June 18, 2011, neighbor was on his porch with Brian Walker, who was his little brother, when neighbor saw two guys. The two guys seemed to be walking from a truck towards victim's car. Then, neighbor saw victim opening the door to her house with the two guys. About 15 or 20 minutes later, neighbor went to throw away cans on the side of his house when he heard (1) "a firecracker sound" and (2) Brian saying he had been hit. Neighbor saw Brian lying on the porch and heard a truck going down the street – the same truck neighbor associated with the two guys. Neighbor ran to victim's house and asked her who she had over because that was the only movement on the street.

Brian died of internal bleeding from a gunshot wound to the pelvis. According to the county medical examiner, the gunshot was distant, meaning it was fired from a distance "greater than two to three feet ad infinitum."

On June 23, 2011, police searched an apartment. They found codefendant and evidence indicating codefendant lived there. They also found items belonging to victim and a loaded .45-caliber assault pistol in a bedroom closet. The bullet that killed Brian was of the same caliber. Both the bullet and the pistol had six lands and grooves with a right-hand twist. No fingerprints were found on the pistol, and the prosecution's firearms expert could not say for certain whether the bullet was fired from the pistol.

The prosecution argued defendant committed felony murder because defendant was "brazen," "[had] the biggest gun," and "put one pop shot" into the crowd while fleeing after committing robbery. That shot happened to hit Brian who bled out and died. He argued, "That's murder. That's felony murder . . . . It doesn't matter who shot . . . in that murder."

3

The trial court instructed the jury with two theories of felony murder: CALCRIM No. 540A, which applies if the defendant committed the fatal act, and CALCRIM No. 540B, which applies if an accomplice committed the fatal act during the commission of a felony which the defendant also committed or aided and abetted.

Defendant's jury[2] found him guilty of all charges.

In a previous appeal, this court stayed defendant's robbery sentence and otherwise affirmed the judgment. (*People v. Spivey* (July 7, 2015, C073902) [nonpub. opn.] (the 2015 opinion).) The 2015 opinion stated officers found the .45-caliber weapon in defendant's closet rather than codefendant's closet. (*Ibid.*)

## II

### *Codefendant's Statement*

On the same day as the apartment search, codefendant spoke to two police detectives. Codefendant stated defendant handed him a "380" gun inside victim's house while defendant "probably had a 4 – 5 or something." Defendant's gun was all black and "looked kind of big . . . whatever it was." After they left victim's house, codefendant saw defendant "talkin' to the dudes across the street" and arguing about "some gang shit." Then codefendant saw a "big ass flash, pow." A few days later, defendant went to codefendant's apartment and asked him to "put this Mack up for" him, so codefendant put it in the closet. Defendant's jury did not hear this statement, but codefendant's jury did.

## III

### *Section 1172.6 Proceedings*

In 2022, defendant filed a petition to vacate his murder conviction under section 1172.6. He argued he was no longer liable for murder under the more circumscribed

---

[2] There were two juries at the trial – one for defendant and one for codefendant. Codefendant's jury found codefendant guilty of the same offenses. (*People v. Mayes* (July 7, 2015, C073853) [nonpub. opn.].)

4

felony-murder rule. Specifically, he argued the evidence showed only: (1) he was involved in the robbery and (2) Brian was killed during the robbery. He relied on the following: (1) officers found a .45-caliber weapon in codefendant's closet and that weapon could not be definitively matched to the bullet that killed Brian; (2) no evidence linked defendant to codefendant's apartment; (3) no fingerprints were found on the weapon; and (4) there was no evidence of defendant's motivation to murder Brian. Defendant also expressly referred to codefendant's statement and the resulting insinuation that "[defendant] may have been [Brian's] actual killer," but defendant argued the firearm discovery at codefendant's apartment undermined that insinuation.

In its written response, the prosecution argued the petition should be denied because defendant was the actual killer or was a major participant in the robbery and murder with reckless disregard for human life. In support of the "actual killer" theory, the prosecution argued that the ".45-caliber assault weapon in [defendant's] closet was the weapon identified in [defendant's] possession by the robbery/kidnapping victims." The prosecution requested that the court take judicial notice of defendant's record of conviction and the 2015 opinion.

The trial court found that defendant had established a prima facie case and set the matter for a hearing under section 1172.6, subdivision (d)(3).

At the hearing, the prosecutor stated he was no longer contending that defendant was merely a major participant in the robbery who acted with reckless indifference. Instead, the prosecutor was arguing defendant was Brian's actual killer based on the jury trial transcripts, the trial prosecution's closing argument, as well as the 2015 opinion and the appellate opinions in codefendant's case. The prosecution then referred to (1) codefendant's statement and (2) a 2023 appellate opinion in codefendant's case and a heading in the statement of facts stating that "[defendant] murders [Brian] while

5

fleeing."[3]  Defense counsel objected to the use of codefendant's statement.  The prosecutor explained he was citing the statement only to explain why he was no longer pursuing other felony murder theories.  The trial court admitted the statement for that purpose only but not for "the truth as far as the People's burden of proving [defendant] guilty beyond a reasonable doubt that he was the actual killer."

The prosecutor provided a statement of facts from defendant's trial with record citations.  He described victim's identification of "a .45-caliber assault rifle with magazine . . . located in [defendant's] closet as the gun [defendant] was holding – [codefendant's] closet."  The court commented, " 'Right,' " and defense counsel stated, " 'Thank you.' "  The prosecution referred to that search two more times, correctly describing the closet as being associated with codefendant.  He also referred to the following facts:  (1) codefendant was calm and reassuring while defendant was " 'aggressive,' " " 'demanding,' " and " 'tearing up the house' ";  (2) codefendant was carrying a silver .22-caliber pistol while defendant was carrying a gun with a long clip; (3) the bullet that killed Brian and the weapon found in the closet were of the same caliber and exhibited six lands and grooves with a right-hand twist; and (4) victim's and neighbor's testimony were consistent on timing.  Based on those facts, the prosecution argued that when defendant left victim's house, he saw people across the street and fired.  In his view, defendant "was always in control of the murder weapon" and "[t]here could be no doubt that [defendant] saw [a] potential witness and fired . . . with malice aforethought."

Defense counsel argued that the prosecution's theory amounted to speculation as to who fired the shot that killed Brian.  In her view, someone else who had nothing to do with the burglary could have been the shooter.  Also, the shooter was not defendant

---

[3] We deny the People's request to incorporate the record from the 2023 opinion in codefendant's case.  That record is immaterial to the disposition of defendant's appeal.

6

beyond a reasonable doubt because: (1) victim did not see or hear anything after the two men left her house; (2) neighbor did not see any faces or anyone holding guns; (3) the murder weapon was not found at defendant's home; and (4) the weapon found at codefendant's home did not have defendant's fingerprints on it. Defense counsel twice referred to codefendant's statement and argued his version of the events made "zero sense" or lacked corroborating evidence. In her view, there is an equally "reasonable, plausible theory that once the men left the home, all of these objects were handed over to [codefendant] once they got into the car. And once [codefendant] was driving away, [codefendant] took the gun, put it out the window and shot [Brian] as [Brian] was across the street and could have seen the commission of the crime."

The trial court took judicial notice of defendant's record of conviction, including the opinion from defendant's previous appeal "for procedure only, not fact-finding" and found defendant ineligible for relief. Its written decision included a section entitled "STATEMENT OF FACTS" in which the court described the search of codefendant's apartment and the discovery of a .45-caliber assault weapon in the bedroom closet. The court then stated that "[t]he firearm found in [defendant's] closet was a .45-caliber weapon and also exhibited six lands and grooves with a right hand twist." In the section entitled "LEGAL ANALYSIS," the court found that the prosecution had "proved beyond a reasonable doubt that [defendant] was the actual killer." It cited the following: (1) codefendant was identified as carrying a " 'silver .22-caliber pistol' " while defendant was identified as carrying " 'a gun with a long clip' "; (2) Brian was shot with a .45-caliber firearm; (3) a .45-caliber assault weapon was found in the closet during a search of codefendant's residence; and (4) both the bullet that killed Brian and the firearm found in the closet exhibited six lands and grooves with a right-hand twist. According to the court, the "evidence showed that [defendant] was always in control of the murder weapon. He took it when he left the house and moments later [Brian] was shot at twice.

7

The evidence showed beyond a reasonable doubt that [defendant] saw a potential witness and fired the [.45-caliber] assault weapon twice with malice aforethought . . . ."

Defendant timely appeals.

DISCUSSION

I

*Section 1172.6 Standards*

"In 2018, the Legislature enacted Senate Bill No. 1437 (2017–2018 Reg. Sess.) (Senate Bill No. 1437), which altered the substantive law of murder for accomplices in two respects." (*People v. Arellano* (2024) 16 Cal.5th 457, 467.)  First, Senate Bill No. 1437 narrowed the scope of the felony-murder rule so that a participant in perpetration of a specified felony in which a death occurs can be liable for murder only if:  (1) the person was the actual killer; (2) the person assisted, with intent to kill, the actual killer in the commission of first degree murder; or (3) the person was a major participant in the underlying felony and acted with reckless indifference to human life.  (§ 189, subd. (e).)  And second, Senate Bill No. 1437 now requires that, except in cases of felony murder, "a principal in a crime [must] act with malice aforethought" to be convicted of murder. (§ 188, subd. (a)(3).)

Senate Bill No. 1437 also provided an avenue for a person convicted under the former law to file a petition under section 1172.6 to vacate his conviction and be resentenced if he could no longer be convicted under amended law.  (*People v. Strong* (2022) 13 Cal.5th 698, 708-709.)  If the petitioner makes a prima facie case for relief, then the trial court issues an order to show cause and holds an evidentiary hearing. (§ 1172.6, subds. (c), (d); *People v. Estrada* (2024) 101 Cal.App.5th 328, 336.)  At the hearing, the prosecution must prove, beyond a reasonable doubt, that the petitioner is guilty of murder under state law as amended by Senate Bill No. 1437.  (§ 1172.6, subd. (d)(3).)  The court can consider "evidence previously admitted at any prior hearing or trial that is admissible under current law, including witness testimony, stipulated

8

evidence, and matters judicially noticed." (*Ibid*.)  The court may also consider the procedural history of the case recited in any prior appellate opinion, but it may not consider the factual summary in the opinion.  (*Ibid*; *People v. Lee* (2023) 95 Cal.App.5th 1164, 1183.)  And the prosecutor and petitioner can offer new or additional evidence to meet their respective burdens.  (§ 1172.6, subd. (d)(3).)

We review a trial court's denial of a section 1172.6 petition after an evidentiary hearing for substantial evidence.  (*People v. Emanuel* (2025) 17 Cal.5th 867, 885.)  Under this standard, "we review the entire record in the light most favorable to the judgment of the trial court.  We evaluate whether substantial evidence, defined as reasonable and credible evidence of solid value, has been disclosed, permitting the trier of fact to find guilt beyond a reasonable doubt."  (*People v. Vargas* (2020) 9 Cal.5th 793, 820.)  If the finder of fact's determination is supported, reversal is unwarranted even where " ' "the circumstances might also reasonably be reconciled with a contrary finding." ' "  (*Ibid*.)  A reversal is appropriate only if "upon no hypothesis whatever is there sufficient substantial evidence to support" the fact finder's decision.  (*People v. Redmond* (1969) 71 Cal.2d 745, 755.)  " 'Substantial evidence includes circumstantial evidence and any reasonable inferences drawn from that evidence.' "  (*People v. Grant* (2020) 57 Cal.App.5th 323, 330.)  A reasonable inference may not be based on suspicion alone:  it must be " 'drawn from evidence rather than a mere speculation as to probabilities without evidence.' "  (*Ibid*.)

II

*Defendant's Section 1172.6 Proceedings*

Defendant contends the trial court violated section 1172.6 and his Sixth Amendment and due process rights by relying on:  (1) codefendant's statement; and (2) the factual statement in the 2015 opinion that the .45-caliber weapon was found in defendant's closet.  There was no such reliance.

At the evidentiary hearing, the trial court expressly stated it was not considering codefendant's statement for its truth.[4] It also expressly acknowledged the prosecution's correction of the location where the .45-caliber weapon was found. Although its written decision mentioned the incorrect location in presenting the facts, the decision's legal analysis expressly described the corrected fact. Based on the hearing record and the trial court's written decision, we cannot conclude that the trial court relied on codefendant's statement or the incorrect factual statement in the 2015 opinion.

This leads us to defendant's contention that the remaining evidence before the trial court was insufficient to support its actual killer finding. We disagree. We review the trial court's ruling, not its reasoning, and if the ruling is correct on any ground, we affirm. (*People v. Chism* (2014) 58 Cal.4th 1266, 1295, fn. 12.) Here, the trial court found that defendant was the actual shooter, and substantial evidence exists in defendant's trial record to support that finding. The evidence showed: defendant had the .45-caliber weapon at the start of the robbery while codefendant had the smaller gun throughout the robbery; shortly after defendant and codefendant left victim's house, a .45-caliber bullet struck and killed Brian across the street; and there was no other movement on the street. The evidence also showed that defendant was the leader of the criminal activity and main aggressor on June 18, 2011: he directed victim back to her house with a gun to her back; he tore up victim's house looking for money and guns; and he was demanding, aggressive, and the person who scared victim. By contrast, codefendant followed

---

[4] Because we conclude the trial court followed this limitation, we do not address whether doing otherwise would have amounted to prejudicial error. We also do not address whether defendant invited the court to consider codefendant's statement by expressly referring to it, and the resulting "insinuation" that defendant was the "actual killer," in his petition. (See *People v. Holmes, McClain and Newborn* (2022) 12 Cal.5th 719, 821-822 [when a party by its own conduct induces the commission of error, it may not claim on appeal that the judgment should be reversed because of that error]; *Hofmeister v. Delta Verde Farms* (1959) 171 Cal.App.2d 688, 697 [appellants cannot complain of admission of evidence they themselves introduced].)

defendant heading to victim's house, did not point the gun at victim, and kept reassuring victim and friend they were going to be fine. Based on the totality of the evidence, the trial court's finding that defendant was the actual shooter was not speculative. It was based on reasonable inferences supported by evidence.

This leaves defendant's contention that the trial court applied a theory of malice without giving defendant an opportunity to rebut that theory. In support, defendant relies on the trial court's finding that defendant fired the .45-caliber weapon "with malice aforethought." Because there was sufficient evidence to support the trial court's finding that defendant was the actual killer, we need not address this contention. (See *People v. Fisher* (2023) 95 Cal.App.5th 1022, 1029 [malice not a required element for actual killers].)

DISPOSITION

The order denying defendant's resentencing petition is affirmed.


                                  /s/_____
                                  MESIWALA, J.


We concur:


/s/_____
EARL, P. J.


/s/_____
HULL, J.